Submitted on remand from the Oregon Supreme Court December 16, 1986, affirmed March 18, reconsideration denied May 15, petition for review allowed June 23, 1987 (303 Or 534)

# STATE OF OREGON,
*Respondent,*

*v.*

# MICHAEL CRAIG LANGEVIN,
*Appellant.*

## (146,798; CA A36402)

733 P2d 1383

Paul J. DeMuniz, Salem, appeared for appellant. With him were Robert R. Trethewy and Garrett, Seideman, Hemann, Robertson & DeMuniz, P.C., Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, appeared for respondent. With him were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

Rossman, J., specially concurring.

## BUTTLER, P. J.

This case comes to us on remand from the Supreme Court with instructions to consider it further in the light of that court's recent decisions in *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), and *State v. Westlund,* 302 Or 225, 729 P2d 541 (1986).

Defendant seeks reversal of his conviction for criminally negligent homicide, contending that the trial court erred in denying his motion to suppress samples of blood taken from his body while he was unconscious in the hospital, and evidence derived from tests performed with the blood samples, without obtaining a warrant at any time. In our original opinion, we held that, although the police had authority to take defendant's blood without a warrant, *former* ORS 487.835(2); *State v. Heintz,* 286 Or 239, 594 P2d 385 (1979); *State v. Calderon,* 67 Or App 169, 678 P2d 1245, *rev den* 297 Or 272 (1984), under the Oregon Constitution as interpreted in *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), and *State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985), they did not have authority to test it for its alcohol content without a warrant, because they had ample time within which to obtain one. On remand, we review both questions, because *Owens* dealt with both of them, and take our facts primarily from the trial court's findings.

On January 1, 1984, troopers Moreland and Milton of the Oregon State Police investigated a fatal single car traffic accident, which had occurred at approximately 2:35 a.m. on that date. Defendant was the driver; he was unconscious and seated behind the steering wheel in the driver's seat; he had one passenger with him, who had died at the scene. The automobile was damaged extensively; a portion of its frame had to be removed in order to extricate the dead passenger. There were no skid marks; the tire tracks left by defendant's automobile led straight off the road approximately 110 feet into a tree, which it struck. The car had left the roadway at a point where there was a gradual curve, and there was no evidence of an attempt to brake or swerve.

Both officers noticed the odor of alcohol on defendant's breath, and both of them believed that defendant had been affected by the alcohol he had consumed. He acted violently toward the officers and others who were trying to help

him. Both officers believed that a felony had been committed and that evidence of that crime would be found in defendant's blood. Both of them knew from their training and experience that any alcohol that was in defendant's blood would dissipate rapidly and that it was necessary to obtain samples of his blood as soon as possible in order to preserve the evidence.

Milton followed the ambulance carrying defendant to the hospital, arriving there at approximately 3:45 a.m. At the hospital, in addition to smelling the odor of alcohol on defendant's breath, Milton noticed that his eyes were extremely bloodshot. He attempted to communicate with defendant, but he was unconscious and unresponsive. Accordingly, Milton requested hospital personnel to draw blood from defendant. He was present and observed a technician draw blood on two occasions, the first at 4 a.m. and the second at 5:12 a.m. In each instance, he seized the self-sealing vial of blood immediately after it had been drawn. Milton had not placed defendant under arrest before the blood was drawn, although the court found that he had probable cause to do so. The blood was examined in the Oregon State Crime Laboratory between January 4 and January 18. No search warrant was obtained before the blood was drawn or before the opening of the vials and the scientific analysis of the blood.

We are satisfied that the officers had probable cause to believe that defendant had been drinking an alcoholic beverage and that the alcohol in his system was a factor in causing him to drive off the road at what appeared to them to be a high speed, in fog, causing him to hit a tree, damage his car extensively and kill his passenger. Because of the evanescent nature of alcohol in the blood, it has been recognized, as a matter of law, that practical necessity dictates the taking of blood samples before the alcohol dissipates. *State v. Heintz, supra; State v. Calderon, supra.* Defendant, however, contends that probable cause and exigent circumstances do not justify the warrantless seizure of his blood. That question has not been decided by the Oregon courts applying the Oregon Constitution, although *Heintz* sanctions such a search as an incident to a lawful arrest, relying on *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966). It appears from *Schmerber* that an arrest is necessary under the Fourth Amendment in order to justify taking blood from a defendant if the warrant requirement is to be avoided. The court did,

however, make a point of the practical necessity for taking blood samples promptly. Here, defendant contends that he had not been arrested, and the trial court so found.

■ In *State v. Heintz, supra,* the Supreme Court did not accept this court's holding that probable cause and exigent circumstances justified the warrantless taking of blood from the defendant without his consent. It recognized that *Schmerber* was limited to a search incident to a lawful arrest. However, it concluded that, when the police officer directed that blood be taken at the hospital after the fatal accident, the defendant was under " 'actual or constructive restraint' " so as to be under arrest for purposes of ORS 133.005(1).[1] 286 Or at 248. We are compelled to conclude that, if Heintz was under arrest under substantially identical circumstances as defendant here, so was defendant, as a matter of law.

At the time when *Heintz* was decided, there was no statute authorizing the drawing of blood without a person's consent. Since then, *former* ORS 487.835 was enacted,[2] which provided, in pertinent part:

"Nothing in ORS 487.805 is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood or a test of the person's blood or urine, or both, to determine the presence of a controlled substance in the person as provided in the following:

"(1) If, when requested by a police officer, the person expressly consents to such a test.

"(2) Notwithstanding subsection (1) of this section, from a person without the person's consent if:

"(a) The police officer has probable cause to believe that

---

[1] ORS 133.005(1) provides:

" 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

The court appears to have concluded that, because defendant was searched, he was arrested constructively.

[2] ORS 487.835 was enacted by Or Laws 1983, ch 822, § 7; it was repealed by Or Laws 1983, ch 338, § 978, effective January 1, 1986, and reenacted as ORS 813.140, Or Laws 1985, ch 16, § 299.

the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

"(b) The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

Although the statute does not require that the person be under arrest at the time when blood is taken without his consent, defendant does not contend that the statute is unconstitutional; instead, he ignores it. He does contend, however, that the police may not, under the Oregon Constitution, take a person's blood without his consent regardless of whether he is under arrest. Because we have concluded, as we must, that defendant was under arrest at the time when his blood was drawn, *State v. Heintz, supra,* we need not decide whether the search and seizure would be permissible in the absence of an arrest. In *Heintz,* the court relied entirely on *Schmerber v. California, supra.* It did not engage in a separate analysis under Article I, section 9, although it recognized its authority to adopt a different rule under the Oregon Constitution but declined to do so. Later, in *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the court declared Oregon's constitutional independence, embarking on an analysis of Article I, section 9, separate from that employed under the Fourth Amendment. Although *Caraher* does not, as defendant contends, render *Heintz* a non-authority for that reason alone, the substance of the decision in that case may cast doubt on the validity of the search of defendant incident to his arrest.

In *State v. Owens, supra,* the court recognized that *Caraher* not only rejected the federal rule for searches incident to arrest announced in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), and *Gustafson v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973), which permit full searches of the person incident to any lawful custodial arrest, it adopted a different rule under Article I, section 9. 302 Or at 201. Under *Caraher,* a search must be limited to evidence of the crime for which the arrest was made and must be close in time and space to the arrest, and the intensity of the search must be commensurate with the crime and what is known of the criminal.

If there is a problem here, it is with the intensity of

the search. As the court stated in *Owens*, "the fact of arrest does not grant an unqualified right to search an arrestee's person for crime evidence." 302 Or at 201. However, if the search is for evidence of the crime for which the arrest was made and the evidence could be concealed on the arrestee's person, "no 'container rule' blocks the intensity of the incidental search." 302 Or at 201. Here, the evidence was contained in defendant's blood vessels. In order to obtain that evidence, it was necessary to puncture his skin with a hypodermic needle, which is perhaps as intensive a search as one can imagine. We understand *Heintz* to have superimposed the doctrine of practical necessity on this kind of search. The court emphasized the evanescent nature of alcohol in the blood.

It is not clear from *former* ORS 487.835, enacted after *Heintz* was decided, whether the legislature intended to limit *Heintz* to cases where the defendant expressly consents to the taking of his blood or is unconscious. *Heintz* does not say that either condition is necessary, although it appears that the defendant there was incapable of consenting. Neither is it clear whether the legislature impliedly adopted the doctrine of practical necessity for taking a person's blood, regardless of whether the person was under arrest. We can perceive of no basis for concluding that there is a practical necessity if the person consents but none if he refuses. Finally, if consent is the keystone for the intensive intrusion, how can we justify taking blood from an unconscious person who has not consented? Certainly, the intrusion is no less intense, and it is equally certain that we cannot reasonably presume that the unconscious person would have consented if he were conscious.

■    Notwithstanding the unanswered questions, we interpret *Heintz* to hold that, if the defendant is under arrest for a crime related to the consumption of alcohol and if the police have probable cause to believe that the defendant's blood will contain evidence of that crime, they may, under both the state and federal constitutions, take blood samples if the defendant is unable to consent expressly to their doing so, because of practical necessity. Nothing in *Caraher* changes that conclusion. Accordingly, the taking of two blood samples from defendant while he was unconscious and under arrest did

not violate either Article I, section 9, *State v. Heintz, supra,* or the Fourth Amendment. *Schmerber v. California, supra.*

The remaining question is whether the warrantless testing of defendant's blood samples after the passage of at least four days was permissible under the Oregon Constitution. In our original opinion, we held that it was not, citing *State v. Lowry, supra,* and our opinion in *State v. Westlund, supra.* The Supreme Court reversed our opinion in *Westlund, State v. Westlund, supra,* in which we had followed the analysis contained in *Lowry,* citing *State v. Owens, supra.* In *Owens,* the court, after holding that the warrantless seizure of a transparent vial containing white powder, which the officer had probable cause to believe was a controlled substance, was valid, went on to consider whether the opening of the container is a "search" or "seizure" under the Oregon Constitution. *State v. Owens, supra,* 302 Or at 205. The court said that transparent containers announce their contents the same as if their contents have been discovered in "plain view." Therefore, the court held, there was no "search," because no cognizable privacy interest inheres in the contents of transparent containers, and so they could be opened and their contents seized and tested without a warrant.

Here, we have concluded that the officers had probable cause to believe that defendant's blood would contain evidence of alcohol consumption and that Milton was authorized to seize blood samples from defendant's unconscious body as part of a search incident to his lawful arrest. The "plain view" analysis applied in *Owens* does not readily adapt itself to these facts, because the vials did not belong to defendant, they were never in his possession and he did not put his blood in them. Accordingly, it matters not whether the blood was contained in transparent vials or whether the vials otherwise announced their contents. The officer knew what was in the vials, because he had directed the taking of defendant's blood, was present when it was done and took possession of each vial after the blood was drawn.

■  Accordingly, no question is presented relating to the opening of a closed container; there was no search involved in opening the vials and there was no additional seizure of the blood in testing its BAC, because the blood already had been seized. Under those circumstances, the testing was not a

search, because it was done to confirm the presence of alcohol, which the police had probable cause to believe was present. *State v. Owens,* 302 Or at 206.

The trial court did not err in denying defendant's motion to suppress the evidence derived from the chemical analysis of his blood.

Affirmed.

**ROSSMAN, J.,** specially concurring.

Although I agree with the majority's discussion of the first issue, *i.e.,* whether the police lawfully drew blood from the unconscious defendant, I feel compelled to write separately on the lawfulness of testing the blood for alcohol. This case was remanded for reconsideration in the light of *State v. Owens,* 302 Or 196, 729 P2d 524 (1986). I believe that we must read *Owens* in conjunction with its companion cases, which were decided the same day: *State v. Westlund,* 302 Or 225, 729 P2d 541 (1986), *State v. Forseth,* 302 Or 233, 729 P2d 545 (1986), and *State v. Herbert,* 302 Or 237, 729 P2d 547 (1986). The simple rule that can be distilled from the four cases read together is that, whenever the police lawfully seize and have in their possession a container that they have probable cause to believe contains evidence of a crime, they have a right to open it, examine the contents and to subject the contents to confirmatory testing without a warrant. Accordingly, I would reach the same result as the majority, but by a more direct path.