Argued and submitted October 6, 1987, Court of Appeals and trial court affirmed
January 6, 1988

### STATE OF OREGON,
*Respondent on Review,*

*v.*

### MICHAEL CRAIG LANGEVIN,
*Petitioner on Review.*

(TC 146,798; CA A36402; SC S33906)

748 P2d 139

Paul J. De Muniz, Salem, argued the cause and filed the petition and memorandum on behalf of petitioner on review.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause on behalf of respondent on review.

GILLETTE, J.

## GILLETTE, J.

This case, like *State v. Milligan,* 304 Or 659, 748 P2d 130 (1988), involves the warrantless and unconsented extraction of blood from a person suspected of committing an alcohol-related crime. The Court of Appeals described the events giving rise to this appeal as follows:

"On January 1, 1984, troopers Moreland and Milton of the Oregon State Police investigated a fatal single car traffic accident, which had occurred at approximately 2:35 a.m. on that date. Defendant was the driver; he was unconscious and seated behind the steering wheel in the driver's seat; he had one passenger with him, who had died at the scene. The automobile was damaged extensively; a portion of its frame had to be removed in order to extricate the dead passenger. There were no skid marks; the tire tracks left by defendant's automobile led straight off the road approximately 110 feet into a tree, which it struck. The car had left the roadway at a point where there was a gradual curve, and there was no evidence of an attempt to brake or swerve.

"Both officers noticed the odor of alcohol on defendant's breath, and both of them believed that defendant had been affected by the alcohol he had consumed. He acted violently toward the officers and others who were trying to help him. Both officers believed that a felony had been committed and that evidence of that crime would be found in defendant's blood. Both of them knew from their training and experience that any alcohol that was in defendant's blood would dissipate rapidly and that it was necessary to obtain samples of his blood as soon as possible in order to preserve the evidence.

"Milton followed the ambulance carrying defendant to the hospital, arriving there at approximately 3:45 a.m. At the hospital, in addition to smelling the odor of alcohol on defendant's breath, Milton noticed that his eyes were extremely bloodshot. He attempted to communicate with defendant, but he was unconscious and unresponsive. Accordingly, Milton requested hospital personnel to draw blood from defendant. He was present and observed a technician draw blood on two occasions, the first at 4 a.m. and the second at 5:12 a.m. In each instance, he seized the self-sealing vial of blood immediately after it had been drawn. Milton had not placed defendant under arrest before the blood was drawn, although the court found that he had probable cause to do so. The blood was examined in the Oregon State Crime Laboratory between January 4 and January 18. No search warrant was obtained

before the blood was drawn or before the opening of the vials and the scientific analysis of the blood." *State v. Langevin,* 84 Or App 376, 378-79, 733 P2d 1383 (1987).

Defendant was charged with manslaughter in the second degree in connection with the death of his passenger. He filed a pretrial motion to suppress the results of the chemical analysis of his blood. The motion was denied and the case subsequently was tried to the court on stipulated facts. The court found defendant guilty of criminally negligent homicide, a lesser included offense of manslaughter. ORS 163.125; 163.145.

Defendant appealed his conviction, arguing that the trial court erred in denying his motion to suppress. The Court of Appeals reversed. *State v. Langevin,* 78 Or App 311, 715 P2d 1355 (1986). Relying on its previous interpretation of Article I, section 9, of the Oregon Constitution, in *State v. Westlund,* 75 Or App 43, 705 P2d 208 (1985), the Court of Appeals held that, in the absence of exigent circumstances, the state did not have the authority to conduct a warrantless test of defendant's blood samples for their alcohol content.

This court subsequently reversed the Court of Appeals in *State v. Westlund. State v. Westlund,* 302 Or 225, 729 P2d 541 (1986). On the state's petition for review, we reversed the present case and remanded it to the Court of Appeals for further consideration in light of *State v. Westlund, supra,* and *State v. Owens,* 302 Or 196, 729 P2d 524 (1986). *State v. Langevin,* 302 Or 298, 729 P2d 552 (1986).

On remand, the Court of Appeals affirmed defendant's conviction. *State v. Langevin,* 84 Or App 376, 733 P2d 1383 (1987). The court held that, under this court's opinions in *Owens* and *Westlund, supra,* the state was not required to obtain a warrant before analyzing the samples of defendant's blood for their alcohol content. The court found that the police had probable cause to believe that defendant had consumed alcohol and that his consumption of alcohol was a factor in the accident that killed his passenger. Relying on this court's opinion in *State v. Heintz,* 286 Or 239, 594 P2d 385 (1979), the Court of Appeals concluded that the warrantless extraction of defendant's blood was lawful. The court interpreted *Heintz* as holding that:

"[I]f the defendant is under arrest for a crime related to the

consumption of alcohol and if the police have probable cause to believe that the defendant's blood will contain evidence of that crime, they may, under both the state and federal constitutions, take blood samples if the defendant is unable to consent expressly to their doing so, because of practical necessity." 84 Or App at 382.

Although the police had not placed defendant under formal arrest before taking the blood samples, the Court of Appeals found that defendant was under constructive restraint and, therefore, under arrest within the meaning of *Heintz.*

Defendant petitioned for review, arguing that the Oregon Constitution requires that a suspect be under a "valid custodial arrest" to justify a warrantless search incident to that arrest. Because the police in this case did not follow the statutory requirements for a formal arrest set out in ORS 133.005(1) and 133.235(3),[1] defendant argues, the state could not justify the warrantless extraction of defendant's blood as a search incident to his arrest. Defendant also argues that the state did not prove that exigent circumstances existed to justify the warrantless extraction of his blood. We allowed review in this case and in *State v. Milligan, supra,* to determine the role that an arrest plays in cases such as these.

■■ In *State v. Milligan, supra,* we held that no statute requires suppression of a blood sample taken without a warrant or consent from a person suspected of committing a crime relating to the consumption of alcohol other than the crime of driving under the influence of intoxicants. We further held that an arrest is not necessary, under either the state or

---

[1] ORS 133.005(1) provides:

" 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

ORS 133.235(3) provides:

"The officer [making an arrest] shall inform the person to be arrested of the officer's authority and reason for the arrest, and, if the arrest is under a warrant, shall show the warrant, unless the officer encounters physical resistance, flight or other factors rendering this procedure impracticable, in which case the arresting officer shall inform the arrested person and show the warrant, if any, as soon as practicable."

federal constitution, before extracting the blood sample without a warrant, so long as the police have probable cause sufficiently strong to justify such an arrest, had they made one. For the reasons stated in that opinion, the trial court did not err in denying defendant's motion to suppress.[2]

The decisions of the Court of Appeals and the trial court are affirmed.

---

[2] Defendant did not argue below that the police should have attempted to obtain a warrant during the hour separating the two blood tests. Accordingly, we do not reach that issue. *See State v. Milligan,* 304 Or 659, 666-67, 748 P2d 130 (1988).