Argued and submitted May 7, taken In Banc and resubmitted October 10, 1990, reversed and remanded April 10, reconsideration denied June 19, petition for review denied July 23, 1991 (311 Or 643)

# STATE OF OREGON,
*Appellant,*

*v.*

# TERRY ALAN GREASON,
*Respondent.*

## (M 07827; CA A62025)

809 P2d 695

Meg Reeves, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Bruce A. Bass, Hillsboro, argued the cause and filed the brief for respondent.

ROSSMAN, J.

Buttler, J., concurring in part; dissenting in part.

## ROSSMAN, J.

Defendant was charged with operating a boat under the influence of intoxicants. ORS 830.325 (*former* ORS 488.160).[1] The state appeals from a pretrial order that suppressed both a non-Mirandized statement to a police officer and the results of a breath test. Reviewing for errors of law, we reverse and remand for further findings.

Defendant was lawfully stopped for operating his boat in excess of the posted speed limit at Hagg Lake in Washington County. With his overhead lights activated, Marine Patrol Officer Gregg pulled his boat alongside defendant's boat and asked to see defendant's certificate of registration. When defendant complied, Gregg noticed that he had trouble retrieving the document from his wallet and unfolding it. Gregg also smelled a strong odor of alcohol on defendant's breath. Asked if he had been drinking, defendant replied that he had had "about a six-pack" to drink. Gregg retained defendant's registration.

Suspecting that defendant was intoxicated, Gregg decided to conduct a field sobriety test. He testified that there were three people in defendant's small speedboat, and he did not believe that it could hold another passenger, so he asked defendant to board the patrol boat. Defendant complied. Gregg then asked him to recite the alphabet, which defendant did very quickly, leaving out everything from K to Q. When requested to perform a thumb to finger count, defendant replied that he could not do that "even when he was sober." Gregg then asked defendant if he would accompany him to the sheriff's boathouse to complete other sobriety tests that could not be performed on the patrol boat. Defendant agreed and allowed one of his passengers to take his boat to its trailer. Gregg transported defendant to the boathouse, which was located less than five minutes away. After they arrived, Gregg could not administer the tests because the boathouse was rocking; he asked defendant to perform the tests in the parking lot, but defendant refused to do so in public. Gregg then

---

[1] The language in the current version of the statute is identical to that in the former. It provides, in part:

"(1) No person under the influence of an intoxicating liquor or controlled substance, or who is a habitual user of controlled substances, shall operate, propel or be in actual physical control of any boat."

placed defendant under arrest,[2] advised him of his *Miranda* rights and put him in the patrol car.

The passenger who was to have returned defendant's boat arrived at the boathouse and reported that the third passenger, who was intoxicated, had thrown him out of the boat and was operating it on the lake. Gregg called for two more officers, one to stay with defendant and one to help Gregg retrieve defendant's boat. After they secured the boat, Gregg took defendant to the Washington County Jail. The officer testified:

> "I advised Mr. Greason that there is no consent form required on a crime like this, so I advised him that he could either take the [I]ntoxilyzer test voluntarily for me, or I could request a blood draw. He voluntarily took the [I]ntoxilyzer test."

Defendant's breath test indicated a blood alcohol content of .14. Approximately three hours had elapsed since the officer had first come into contact with defendant.

The state's first assignment of error is directed at the trial court's suppression of defendant's statement that he could not complete one of the tests "even when he was sober." Because that remark was made after boarding the officer's patrol boat, the trial court surmised that defendant did not feel free to leave and that *Miranda* warnings were therefore required.

■ ■ In determining when *Miranda*-like warnings are required under the Oregon Constitution,[3] the proper inquiry is whether a person was in "custody" when questioned by the officer. *State v. Walker,* 104 Or App 410, 415, 801 P2d 877 (1990), *rev den* 311 Or 187 (1991). "Custody" encompasses both "full custody," *i.e.,* arrest, and circumstances that, although not rising to the level of full custody, create a "setting which judges would and officers should recognize to be 'compelling.'" *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990)

---

[2] Defendant does not dispute the lawfulness of the stop nor the arrest. Because boating under the influence of intoxicants is a Class A misdemeanor, ORS 830.990(3), and the crime was committed in Officer Gregg's presence, he had authority to arrest defendant without a warrant. ORS 133.310(1)(b).

[3] Article I, section 12 provides, in part:

"No person shall * * * be compelled in any criminal prosecution to testify against himself."

(*quoting State v. Magee,* 304 Or 261, 265, 744 P2d 250 (1987)). In situations involving either full custody or compelling circumstances, warnings are necessary.

■ Although defendant may have felt that he was not free to leave, that alone is not dispositive. For example, during a "stop," which is "a temporary restraint of a person's liberty by a peace officer lawfully present in any place," ORS 131.605(5), a reasonable person would believe that he is "not free to leave." *State v. Horton,* 86 Or App 199, 202, 738 P2d 609 (1987). Nonetheless, a valid stop may be followed by an officer's reasonable inquiry, ORS 131.615(1), and generally that inquiry need not be preceded by warnings. Here, the officer did what was necessary under the circumstances to gather information to confirm or dispel his suspicion that defendant had operated the boat while intoxicated. Defendant complied with the officer's request to board the patrol boat and their discussion occurred in public, alongside defendant's boat and in the presence of his passengers. Like a motorist at a traffic stop, defendant could expect that he would have to answer some questions about his actions and that, unless his answers provided the officer with probable cause for arrest, he would shortly be on his way. His incriminating statement was spontaneous and unsolicited, and neither the setting nor the officer's reasonable inquiry created an environment in which a reasonable person could feel that he was in custody and was being compelled to offer self-incriminating information. Therefore, *Miranda*-type warnings were not required, and the court erred in suppressing the statement.

■ The state's second assignment of error is directed at the trial court's suppression of the Intoxilyzer test results. It should be emphasized that defendant was not arrested for *driving* under the influence (DUII); he was arrested for *boating* under the influence. The Motorist Implied Consent Law[4]

---

[4] ORS 801.010 provides, in part:

"(1) ORS chapters 801 to 822 may be cited as the Oregon Vehicle Code.

"* * * * *

"(3) ORS 813.100, 813.140, 813.150, 813.310, 813.320 and 813.410 to 813.440 may be cited as the Motorist Implied Consent Law."

applies to DUII, but does not apply to this offense.[5] Therefore, defendant is not deemed to have *impliedly* consented to a breath test.

Curiously, the parties do not directly discuss whether the officer was authorized to require defendant to submit to the breath test. Instead, they assume that, if the officer was authorized to take a *blood* draw, then defendant's consent to the *breath* test was a voluntary choice between the two alternatives. Although the precise basis for the trial court's suppression is unclear, it appears to have involved a conclusion that defendant's consent was not voluntary, because the officer lacked that authority.[6]

■■ An officer who has probable cause to arrest for boating under the influence may either obtain a warrant for the withdrawal of a blood sample or, if exigent circumstances are present, require the withdrawal without a warrant. *State v.*

---

[5] The Implied Consent Law provides, in relevant part:

"Any person who operates a *motor vehicle* upon premises open to the public or the highways of this state shall be deemed to have given consent * * * to a chemical test of the person's breath * * * if the person is arrested for driving a *motor vehicle* while under the influence of intoxicants *in violation of ORS 813.010.* * * *" ORS 813.100(1). (Emphasis supplied.)

ORS 813.010 provides, in relevant part:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a *vehicle* while the person [is intoxicated]." (Emphasis supplied.)

"Vehicle" is defined as "any device in, upon or by which any person or property is or may be transported or drawn upon a public highway." ORS 801.590. "Highway" is defined as "every public way, road, street, thoroughfare and place, including bridges, viaducts and other structures." ORS 801.305. The specificity of those terms leads us to conclude that a lake does not fall within the statutory definition of "highway."

The quoted statutory definitions apply with equal force to the Implied Consent Law and to DUII, because both are part of the Oregon Vehicle Code. ORS 801.010(1). "Except where the context requires otherwise, the definitions given in the vehicle code govern its construction." ORS 801.100. Therefore, neither the Motorist Implied Consent Law nor DUII apply to a person operating a boat on water while intoxicated.

[6] In its oral ruling, the trial court said:

"I am going to grant the motion to suppress as to the [B]reathalyzer, based in part on [*State v.* ]*Woodruff,* [81 Or App 484, 726 P2d 396, *rev den* 302 Or 460 (1986),] but based probably more strongly on the officer's statement that he could take blood. And I think, Officer Gregg, that you thought you could. I could certainly be wrong on this. But, I've done a lot of reading in this area and my feeling is that this is not the sort of case where you could take a blood draw if someone decides they don't want to give you a breath test. And that therefore his consent was involuntary."

*Langevin,* 304 Or 674, 748 P2d 139 (1988); *State v. Milligan,* 304 Or 659, 748 P2d 130 (1988).[7] *Langevin* and *Milligan* compel the application of that rule to the expulsion of *breath,* which is a less intrusive procedure than withdrawing blood. For reasons that are not apparent, the trial court refused the state's request for findings on whether the officer had probable cause to believe that defendant had committed a crime involving alcohol and whether exigent circumstances obviated the need for a warrant under the circumstances, because of the evanescent nature of alcohol. The court's refusal to rule on that independent basis for denying defendant's motion to suppress was error.

■ The court also erred in determining the voluntariness of defendant's consent by looking only at whether the officer had authority to search. When a police officer indicates that he has the authority to apply for a search warrant, consent to a search induced by that threat may nonetheless be voluntary, because the officer is threatening "only to do what the law permit[s] him to do." *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), *cert den* 406 US 974 (1972). However, a threat to do that which is lawful does not, in and of itself, *compel* a finding that a subsequent consent was voluntary. In ruling on the voluntariness of a consent to search, courts look to the totality of the facts and circumstances. *State v. Kennedy,* 290 Or 493, 503, 624 P2d 99 (1981). A police officer's threat to apply for a search warrant is but one factor. Others include, *e.g.,* the time and place of the encounter, the number of officers present, the degree of hostility and whether consent was offered or requested. *State v. Kennedy, supra,* 290 Or at 505-06. The question is whether, under the totality of the facts and circumstances, consent to search was improperly compelled or induced. Circumstances, independent of the threat to do what is lawful, may render the consent involuntary.

We remand for findings on the voluntariness of the consent and, if consent was involuntary, on the presence of exigent circumstances.[8]

---

[7] Nothing in those cases appears to limit the holdings to "serious" crimes.

[8] Suppression of the evidence was improper *either* if defendant's consent was voluntary or if a warrant was unnecessary because of the presence of probable cause and exigent circumstances.

Reversed and remanded.

**BUTTLER, P. J.,** concurring in part; dissenting in part.

Although I agree with majority's disposition of the trial court's suppression of the results of the breath test, I do not agree that the trial court erred in suppressing the statement that defendant made after he had been told to board the patrol boat.

The trial court suppressed defendant's statement that he "could not do that even when he was sober," which he made after he boarded the patrol boat and had been asked to do a thumb to finger count. The court found that he was not free to leave at that time. That finding is supported by the evidence: Defendant could not have left without swimming. We are bound by it. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968). The question is whether that finding is sufficient to support the conclusion that defendant was "in custody" or whether the circumstances created a "setting which judges would and officers should recognize to be 'compelling.' " *State v. Smith,* 310 Or 1, 7, 791 P2d 836 (1990), (quoting *State v. Magee,* 304 Or 261, 265, 744 P2d 250 (1987)). If so, defendant was entitled to *Miranda*-type warnings under Article I, section 12, of the Oregon Constitution.

It is not necessary that a person be told that he is not free to leave before he is considered to be in custody, *State v. Smith, supra,* but, if he is told that, he is considered to be in custody "adequate to require a warning before questioning." *State v. Magee,* 304 Or at 266. On the other hand, if the person is told that he is not under arrest or that he is free to leave in circumstances where he may actually do so, the circumstances might not be a "setting which judges would and officers should recognize to be 'compelling.' " *State v. Smith, supra, quoting State v. Magee, supra.* Although defendant was not told that he could not leave, the circumstances were such that there was no need to tell him that. It was obvious that there was no reasonable way that he could leave. Neither was he told that he was not under arrest or that he was free to leave. The circumstances were such that the officer should have recognized that they created a setting that was "compelling," and he should have advised defendant of his rights. The trial court did not err in suppressing that statement.

I would affirm the suppression of the statement made by defendant on the patrol boat.

Joseph, C. J., and Newman, J., concur in this opinion.