Argued and submitted January 29, suppression of first test affirmed; suppression of second and third tests reversed; remanded March 28, State's petition for reconsideration and Moylett's petition for reconsideration denied June 6, both petitions for review allowed July 3, 1990 (310 Or 133)

# STATE OF OREGON,
*Appellant,*

*v.*

# LAWRENCE WILLIAM MOYLETT,
*Respondent.*

## (D890539M; CA A60930)

789 P2d 677

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

William Uhle, Portland, argued the cause and filed the brief for respondent.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

## GRABER, P. J.

Defendant is charged with driving under the influence of intoxicants, ORS 813.010, assault in the fourth degree, ORS 163.160, and criminal mischief in the second degree, ORS 164.354, after an accident in which he was involved. At the investigating officer's request, hospital personnel drew three samples of defendant's blood, the first before the officer obtained a search warrant and the second and third after he had done so. The trial court suppressed evidence of defendant's blood alcohol content derived from all of the samples, and the state appeals. We affirm as to the first sample and reverse as to the second and third.

On the evening of December 23, 1988, defendant drove his vehicle into the rear end of a pickup truck that had stopped to make a left turn. Officer Parks came to the collision scene at 8:18 p.m. and noted that defendant had a strong odor of alcohol on his breath, bloodshot and watery eyes, and slow and slurred speech. Defendant told Parks that he had had three gin and tonics, beginning about 3:30 that afternoon. Defendant was then driven to a hospital in Hillsboro for examination and treatment. Parks again interviewed defendant at the hospital, beginning at 9:15 p.m. The interview lasted about a half hour; during it, defendant refused to consent to giving a blood sample for a blood alcohol test. Parks, nevertheless, asked hospital personnel to draw a sample, which they did at 10:06 p.m.

After Parks obtained the first blood sample, his supervisor told him that the District Attorney's office recommended that he get a warrant for the samples. Parks then handwrote an affidavit, took it to a judge, and received a handwritten warrant at 11:03 p.m. At 11:10 p.m. and 12:08 a.m., hospital personnel drew two more samples pursuant to the warrant. Parks' affidavit reads:

"I, Bruce Parks at [sic] police officer with the City of Hillsboro, Washington County of [sic] Oregon.

"I have been a police officer for nine year [sic], during which time I have received traffic investigation classes and have investigation [sic] over 50 accident scenes.

"On Friday Dec. 23rd 1988 at about 2018 hrs, I came upon a traffic accident at the intersection of T.V. Hwy and Shute Park Plaza. At the scene I found that a passenger in one of the

involved vehicles was in great pain and complained of back and neck injures [*sic*].

"During my investigation I learned that a vehicle driven by Jose Tavera was stopped in a turn lane and another vehicle driven by Lawrence Moylett ran into the rear of Tavera's vehicle injuring his wife Beverly Tavera.

"During my contact with Moylett at the scene, I noticed he had a strong odor of alcoholic beverage on his breath. Moylett later told me [he] had three Gin and tonics at the B.J.'s resturant [*sic*] before the accident.

"At this time, I believe Mr. Moylett is under the Influence and driving a motor vehicle involved in an injury accident. Mr. Moylett at this time is refusing to submitt [*sic*] to a blood alcohol draw.

"I hear by [*sic*] request permission to search Lawrence Moylett's blood for his blood alcohol content for D.U.I.I. and assault with a motor vehicle."

Defendant moved to suppress the evidence of the three blood samples. He argued that there was no probable cause, warrant, or exigent circumstances for the first sample and that the warrant for the second and third was invalid, because the affidavit did not establish probable cause to believe that defendant had committed any crime. The trial court granted the motions.

We first consider the admissibility of the sample taken before Parks obtained the warrant. At the time that he asked for the sample, Parks' knowledge of the circumstances of the accident and of defendant's appearance and demeanor gave him probable cause to believe that defendant had been driving while under the influence of intoxicants and that he had committed assault in the fourth degree. The question is whether there were exigent circumstances that excused the failure to obtain a warrant.

■     In *State v. Milligan*, 304 Or 659, 748 P2d 130 (1988), the Supreme Court held that the fact that alcohol dissipates from the blood at some significant rate may provide exigent circumstances that would justify drawing a sample without first obtaining a warrant. It held that the "evidence established that exigent circumstances existed justifying the warrantless extraction of at least the initial blood sample, *so long as the extraction was made promptly after the suspect was taken*

*to a place where it could be made.*" 304 Or at 666. (Emphasis supplied.) That holding does not mean that exigent circumstances exist in every case where blood alcohol dissipation might be important. The state argues that *Milligan* and *State v. Langevin,* 304 Or 674, 748 P2d 139 (1988), create a *per se* exigency rule for the extraction of blood samples from persons whom the police have probable cause to arrest for DUII. We do not read *Milligan* and *Langevin* to establish that rule.

■■ Here, defendant arrived at the hospital by 9:15 p.m., when Parks began questioning him. However, Parks did not obtain the first sample until 10:06 p.m. When Parks decided to get a search warrant, it took him about 45 minutes. That was less than the time between the start of the interview with defendant and the drawing of the first sample. Parks testified that he had never before obtained a search warrant in less than two or three hours, and the court found that he did not know that he could obtain a warrant in the way that he did until his supervisor explained how. However, the fact that he did obtain the warrant in 45 minutes shows that it was possible to do so in a relatively short time. "Police officers cannot create their own exigencies by failing to familiarize themselves with constitutionally mandated procedures." *State v. Roberts,* 75 Or App 292, 296, 706 P2d 564 (1985). The extraction of defendant's blood was not made promptly after he was taken to a place where it could be done, and Parks had an opportunity in the time that actually elapsed to obtain a warrant. On this record, there were no exigent circumstances that excused his failure. The trial court correctly suppressed evidence of the first test.

■ The second and third tests raise a different issue: whether Parks' affidavit supports a finding of probable cause to believe that defendant was driving under the influence. The affidavit does not show the precision that a trained lawyer with unlimited time could have given it. It did not need to. What it does show, when read in a common sense manner, is that Parks is an officer with experience in investigating traffic accidents, that defendant had driven into the rear end of a stationary vehicle with enough force to injure one of the people in it, and that defendant had a strong odor of alcohol on his breath and admitted that he had been drinking. The nature of the accident could lead the judge to infer that defendant had

been driving carelessly, and the alcohol odor and the admission of drinking allowed the judge to infer that defendant's carelessness was the result of his being under the influence of the alcohol. Although Parks did not state how close in time defendant's drinking was to the accident, the judge could infer from the continuing strong odor of alcohol that it was recent enough to have affected defendant's driving. The warrant was valid, and the trial court erred in suppressing the second and third tests.

Suppression of first test affirmed; suppression of second and third tests reversed; remanded.