Argued and submitted September 6, 1990, decision of Court of Appeals reversed in part and affirmed in part, judgment of district court affirmed in part and reversed in part and remanded to district court for further proceedings July 16, 1992

## STATE OF OREGON,
*Respondent on Review/*
*Petitioner on Review,*

*v.*

## LAWRENCE WILLIAM MOYLETT,
*Petitioner on Review/*
*Respondent on Review.*

(DC D890539M; CA A60930;
SC S37110, S37148)

836 P2d 1329

William Uhle, Portland, filed the petition and argued the cause for petitioner on review/respondent on review.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent on review/petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson,** Chief Justice, and Peterson,*** Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

Unis, J., concurred and filed an opinion.

---

** Carson, C. J., Chief Justice when case decided.

*** Peterson, J., Chief Justice when case argued.

.

.

## GILLETTE, J.

Defendant in this criminal case is charged with driving under the influence of intoxicants (DUII), ORS 813.010, assault in the fourth degree, ORS 163.160, and criminal mischief in the second degree, ORS 164.354. Defendant was hospitalized following a vehicular collision. An investigating officer asked hospital personnel to extract three blood samples from defendant. The first sample was taken before the officer obtained a search warrant for defendant's blood. The second and third samples were taken after a search warrant was obtained. On defendant's motion, the trial court suppressed evidence obtained from the first sample because "no exigent circumstances existed." Concerning the subsequent two blood samples, the trial court suppressed on the ground that the "affidavit for the search warrant is insufficient" because it contained no facts "[showing] that the defendant was affected to a perceptible degree or indeed at all." The Court of Appeals affirmed as to the first blood sample, but reversed as to the second and third. *State v. Moylett*, 101 Or App 86, 789 P2d 677 (1990). We hold that, as to the charge of DUII, all three blood samples properly were suppressed, but that, as to the other two charges, the first blood sample properly was suppressed while the second and third blood samples were admissible.

The Court of Appeals' summary of the events giving rise to this appeal, which both parties accept, is as follows:

"On the evening of December 23, 1988, defendant[, who was an off-duty deputy sheriff,] drove his vehicle into the rear end of a pickup truck that had stopped to make a left turn. Officer Parks came to the collision scene at 8:18 p.m. and noted that defendant had a strong odor of alcohol on his breath, bloodshot and watery eyes, and slow and slurred speech. Defendant told Parks that he had had three gin and tonics, beginning about 3:30 that afternoon. [Parks did not arrest defendant at the scene.] Defendant was then driven [by a fellow deputy sheriff, whom Parks had summoned at defendant's request,] to a hospital in Hillsboro for examination and treatment. Parks again interviewed defendant at the hospital, beginning at 9:15 p.m. The interview lasted about a half hour; during it, defendant refused to consent to giving a blood sample for a blood alcohol test.

Parks, nevertheless, asked hospital personnel to draw a sample, which they did at 10:06 p.m.

"After Parks obtained the first blood sample, his supervisor told him that the District Attorney's office recommended that he get a warrant for the samples. Parks then handwrote an affidavit, took it to a judge, and received a handwritten warrant at 11:03 p.m. At 11:10 p.m. and 12:08 a.m., hospital personnel drew two more samples pursuant to the warrant."

*State v. Moylett, supra,* 101 Or App at 88. (Bracketed additions ours.)

Parks' affidavit states:

"I, Bruce Parks [am a] police officer with the City of Hillsboro * * *.

"I have been a police officer for nine year[s], during which time I have received traffic investigation classes and have [i]nvestigat[ed] over 50 accident scenes.

"On Friday Dec. 23rd 1988 at about 2018 hrs, I came upon a traffic accident at the intersection of T.V. Hwy and Shute Park Plaza. At the scene I found that a passenger in one of the involved vehicles was in great pain and complained of back and neck injur[i]es.

"During my investigation I learned that a vehicle driven by Jose Tavera was stopped in a turn lane and another vehicle driven by Lawrence Moylett ran into the rear of Tavera's vehicle injuring his wife Beverly Tavera.

"During my contact with Moylett at the scene, I noticed he had a strong odor of alcoholic beverage on his breath. Moylett later told me [he] had three Gin and tonics at the B.J.'s rest[a]urant before the accident.

"At this time [*i.e.,* at 10:56 p.m.], I believe Mr. Moylett is under the Influence and driving a motor vehicle involved in an injury accident. Mr. Moylett at this time is refusing to submi[t] to a blood alcohol draw.

"I * * * [hereby] request permission to search Lawrence Moylett's blood for his blood alcohol content for D.U.I.I. and assault with a motor vehicle."

In the trial court, defendant argued that the initial extraction of a blood sample was made without probable cause to believe that defendant had committed a crime. He further argued that, even if there were probable cause, the

first sample was extracted without either a search warrant or exigent circumstances that would obviate the need for a warrant. He also argued that the warrant under which the second and third blood samples were extracted was not supported by probable cause. The trial court granted defendant's motion in its entirety. Concerning the initial blood sample, the trial court ruled that the evidence showed "that there was a manner of obtaining a search warrant prior to obtaining the first blood sample taken. [The evidence] further showed that the procedure could be accomplished quickly within the time period necessary to prevent the loss of evidence." As to the second and third samples, the trial court concluded that there was no probable cause to authorize taking the samples, because "[t]he affidavit contains no facts setting out why the officer believes that the defendant was, at any time, under the influence. Nothing shows that the defendant was affected to a perceptible [degree] or indeed at all."

On appeal, the Court of Appeals held that the initial blood sample was taken in violation of Article I, section 9, of the Oregon Constitution,[1] because the taking of the sample constituted a warrantless search and there were no exigent circumstances justifying a warrantless search. *State v. Moylett, supra,* 101 Or App at 90-91. The court held that this court's cases on blood sample searches, *State v. Milligan,* 304 Or 659, 748 P2d 130 (1988), and *State v. Langevin,* 304 Or 674, 748 P2d 139 (1988), do "not mean that exigent circumstances exist in every case where blood alcohol dissipation might be important." *State v. Moylett, supra,* 101 Or App at 90. In the present case, the court stated, "[t]he extraction of defendant's blood was not made promptly after he was taken to a place where it could be done, and Parks had an opportunity in the time that actually elapsed to obtain a warrant." *Id.* Concerning the warrant issued between the first and second samples, on the other hand, the court held that there was probable cause to justify issuance of the warrant because the affidavit "allowed the judge to infer that defendant's

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

carelessness [in causing the traffic accident] was the result of his being under the influence of the alcohol." *Id.* at 91.

Both the state and defendant petitioned this court for review. The state contends that the Court of Appeals erred in holding that no exigent circumstances existed under the standard set forth by this court in *State v. Milligan, supra,* and *State v. Langevin, supra,* which would justify the taking of the initial blood sample. The state argues that Parks did no more than an

"on-the-scene investigation, interviewing of witnesses, and arranging for the taking of a blood sample * * *. * * * The fact that Officer Parks ultimately was able to obtain a warrant for the drawing of blood samples in about 45 minutes, contrary to his prior understanding of the length of time required, is simply a fortuitous circumstance which does not affect the analysis of this case."

Defendant contends that the Court of Appeals erred in holding that there was probable cause supporting issuance of the warrant obtained by Parks before the second and third samples were taken.

We allowed review of both petitions to address the important issues involved. As we shall demonstrate, the Court of Appeals' attention in this case was partially diverted from the central consideration, which is the fact that one of the offenses charged is DUII.

THE DRIVING UNDER
THE INFLUENCE CHARGE

■ By now, the appropriate method of resolving properly raised issues of criminal procedure in Oregon should be axiomatic. All issues should first be addressed on a sub-constitutional level. Courts then should consider any remaining issues under the Oregon Constitution. Finally, if no state law, including the state constitution, resolves the issues, courts then should turn for assistance to the Constitution of the United States. *See State v. Kennedy,* 295 Or 260, 262, 666 P2d 1316 (1983) (setting forth methodology). The trial court did not do that in this case.

As noted, the trial court decided this case on probable cause to seize and search grounds — a constitutional consideration. However, with respect to the DUII charge, defendant

first had argued for suppression of the results of all three blood alcohol tests on statutory grounds, *viz.*, that suppression was required under ORS 813.140. The trial court did not rule on this theory. It should have. The motion was well taken.

ORS 813.140 provides:

"Nothing in ORS 813.100 [Oregon's Implied Consent Law] is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood * * * as provided in the following:

"(1)  If, when requested by a police officer, the person expressly consents to such a test.

"(2)  Notwithstanding subsection (1) of this section, from a person without the person's consent if:

"(a)  The police officer has probable cause to believe that the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

"(b)  The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

Under this statute, blood tests like those administered to defendant may only be used in an ensuing prosecution for violation of ORS 813.010 if the requesting officer asks for and obtains consent to the tests or, in the alternative, if the arresting officer has probable cause to believe that the defendant was driving under the influence of intoxicants, that evidence of the offense will be found in defendant's blood *and* the person charged was unconscious or otherwise incapable of expressly consenting to the test. Neither of those circumstances existed here. Defendant did not consent; he was conscious and capable of consenting if he wished to do so.

■    It has been the law in this jurisdiction, at least since 1975, that blood test evidence obtained from a DUII defendant in any way other than pursuant to the statutory procedure is inadmissible in the DUII prosecution. *See State v. Stover*, 271 Or 132, 146-47, 531 P2d 258 (1975) (so holding under prior version of statute); *State v. Heintz*, 286 Or 239, 254, 594 P2d 385 (1979) (same); *see also State v. Milligan*,

*supra*, 304 Or at 664 (recognizing principle that blood alcohol test derived from nonconsensual, warrantless seizure of a blood sample only admissible, if otherwise relevant and competent, as to crimes other than DUII). In the 17 years since this particular construction of the DUII statutes was announced in *Stover*, the legislature has had numerous chances to change the pertinent language of the statutes involved; it has not done so.

■    As the foregoing amply demonstrates, the trial judge had a legal basis for suppressing evidence of defendant's blood alcohol level that was derived from all three samples, at least with respect to the DUII charge. The fact that the judge did not recognize that justification does not change the fact that his ruling suppressing the results of all three blood alcohol tests was, as to the DUII charge, legally correct. It follows that the Court of Appeals holding that reversed the suppression of the second and third samples with respect to the DUII charge was error. That holding is reversed. With respect to the charge against defendant of driving under the influence of intoxicants, in violation of ORS 813.010, the order of the trial court suppressing evidence of the results of all three blood tests is affirmed.

## THE ASSAULT AND CRIMINAL MISCHIEF CHARGES

This, however, does not end the case. ORS 813.320 provides:

> "The provisions of the implied consent law, except ORS 813.300 [which is not pertinent in this case], shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence in any civil action, suit or proceedings or in any criminal action other than a [prosecution for DUII under] * * * ORS 813.010 * * *."

Under ORS 813.320, the results of the blood alcohol tests would be admissible, in spite of ORS 813.140, if the results were offered in connection with some criminal charge other than DUII and otherwise were admissible. As noted, defendant here was charged with two additional offenses, *viz.*, assault in the fourth degree and criminal mischief in the second degree. The rule requiring suppression of the results

of the tests as to the DUII charge does not apply to these offenses. ORS 813.320; *State v. Milligan, supra.*

Following the methodology established in *State v. Kennedy, supra,* it would have been proper for the trial court next to address, with respect to the assault and criminal mischief charges, the question of whether the results of the tests were properly obtained under the Oregon Constitution. As noted, the trial court held that they were not constitutionally obtained, although its decision did not focus on this question with respect to the assault and criminal mischief charges separately (because the parties had not argued the issues to the trial court that way). The Court of Appeals' decision also addressed the question, but only by necessary inclusion in its DUII analysis. That court held that the first test result was inadmissible, but that the results of the two later tests would be admissible. As already explained, the court's conclusion was in error with respect to the admissibility of any of the tests with respect to the DUII charge. We now consider the admissibility of the tests with respect to the assault and criminal mischief charges.

*1. The first blood sample*

■■ At Parks' request, hospital personnel withdrew the first blood sample from defendant. "The extraction of a blood sample by the police is both a search of the person and a seizure of an 'effect' — the person's blood." *State v. Milligan, supra,* 304 Or at 664. In the present case, Parks did not have a search warrant for the first blood sample. The lack of a search warrant, however, does not automatically mean that the search was unreasonable or that the evidence must be suppressed. A warrantless search is "reasonable" under Article I, section 9 — and therefore constitutionally permissible — if it is conducted with probable cause to search and under exigent circumstances. *State v. Matsen/Wilson,* 287 Or 581, 586, 601 P2d 784 (1979) (exigent circumstances exception to warrant requirement recognized). More particularly, when police extract a blood sample from a suspect without a search warrant, the evidence obtained is admissible under the exigent circumstances exception to the warrant requirement if the record shows (1) that the police had probable cause to believe that the suspect "was a vessel containing evidence [*i.e.,* alcohol,] of a crime," *State v. Milligan, supra,* 304 Or at

665, together with probable cause to believe that "an analysis of [the suspect's] blood would yield evidence that he had committed * * * [a] crime," *id.*; and (2) that no "warrant can be obtained without sacrificing the evidence[,] * * * [and] the extraction was made promptly after the suspect was taken to a place where [the extraction] could be made." *Id.* at 666.[2]

■     We hold that Parks had probable cause to arrest defendant at the time the first sample was extracted.[3] In *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), this court held that

"[p]robable cause [to arrest] under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and * * * this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what this officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience."

(Emphasis in original.) Parks' affidavit shows that he subjectively believed that defendant had committed the crimes of driving while under the influence of intoxicants and assault. Moreover, Parks' belief that defendant had committed those crimes was objectively reasonable, given the facts that defendant's eyes were bloodshot and watery, his speech was slow and slurred, he had been in a rear-end automobile collision, and he admitted to consuming three mixed drinks earlier that afternoon.

The same evidence gave Parks probable cause to believe that an analysis of defendant's blood would yield

---

[2] Defendant does not argue that the hospital was an inappropriate place to take a blood sample or that any of the samples in this case were extracted by other than accepted medical practices. *See State v. Milligan,* 304 Or 659, 667-68, 748 P2d 130 (1988) (discussing due process requirement of use of accepted medical practices in *Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966)). *See also* ORS 133.621 (authorizing medical personnel to "withdraw bodily substances * * * and otherwise use medical procedures to gather evidence in a criminal investigation").

[3] Probable cause to arrest is statutorily defined by ORS 131.005(11):

" 'Probable cause' means that there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it."

evidence that defendant had committed a crime. At the time that Parks requested the blood sample, he subjectively believed that alcohol was present in defendant's blood. That belief was objectively reasonable because defendant admitted having some time before consumed alcohol, had bloodshot and watery eyes, slow and slurred speech and only two hours previously had been involved in an automobile accident in which his car rear-ended another vehicle. Similar facts were deemed by this court to establish probable cause to believe that a defendant had been driving under the influence of intoxicants in *State v. Milligan, supra,* 304 Or at 665 ("The circumstances surrounding the accident, the odor of alcohol on defendant's breath and [a witness'] statement that defendant had been drinking heavily were sufficient to establish probable cause.").

■     There being probable cause to seize a sample of defendant's blood, but no warrant, the remaining issue is exigency. In the context of an alcohol-related crime, there commonly will be an exigency because, as we already have noted, a suspect is "a vessel containing evidence of a crime he had committed — evidence that [i]s dissipating with every breath he t[akes]." *State v. Milligan, supra,* 304 Or at 665. In *Milligan,* we explained:

> "In order to determine accurately the level of alcohol in a suspect's blood at the time of the alleged crime, the police must obtain an initial sample of the suspect's blood with as little delay as possible. Testimony at the hearing on defendant's motion to dismiss established that alcohol dissipation rates vary from person to person. To determine the dissipation rate of any particular individual, it is necessary to take more than one blood sample. A nurse at the hospital testified that the 'usual practice' was to draw the blood samples one hour apart. Thus, the first blood sample must be drawn early enough so that a measurable amount of alcohol will still be present in the suspect's blood an hour later."

*Id.* at 666. There was similar evidence in the present record. The loss of alcohol evidence which creates the exigency occurs because of the biological fact that the human body metabolizes and expels alcohol.

■     The exigency created by the dissipating evidence of blood alcohol, however, did not make the blood sample

seizures *per se* reasonable under Article I, section 9. The state was still required to prove, in order to justify the warrantless extraction of defendant's blood, that it could not have obtained a search warrant "without sacrificing the evidence" and that the blood sample that it obtained had been extracted "promptly." *State v. Milligan, supra,* 304 Or at 666.

■       The trial court found — and the evidence supports the finding — that Parks *could* have obtained a search warrant without sacrificing the evidence: "[T]here was a manner of obtaining a search warrant prior to obtaining the first blood sample taken. [The evidence] further showed that the procedure could be accomplished quickly within the time period necessary to prevent the loss of evidence." The evidence was not abstract; Parks' own superiors knew it. It is true that the trial court found that Parks did not know it personally. But we think that it is sufficient, at least for the purposes of defeating the state's attempt to justify Parks' actions taken without a warrant, to show that Parks' own police department knew how to obtain a warrant expeditiously. We recognize that our holding places pressure on police agencies to assure that all of their officers know what techniques are available for obtaining search warrants within their jurisdiction, but that is as it should be. An individual's degree of protection under the Oregon Constitution should not depend on whether the officer who encounters the individual is well or poorly informed. The trial court's order suppressing the result of the first blood test, and the Court of Appeals' affirmance of that ruling, were correct.

*2.   The second and third blood samples*

■       Parks obtained a search warrant before asking hospital personnel to extract the second and third blood samples. At issue is whether that warrant was based on probable cause to search defendant for evidence of alcohol.

ORS 133.555(2) provides:

"If the judge finds that the application meets the requirements of ORS 133.535 and that, on the basis of the record made before the judge, there is probable cause to believe that the search will discover things specified in the application and subject to seizure under ORS 133.535, the judge shall issue a search warrant * * *."

"The legislature has not defined the term probable cause to search, as it has probable cause to arrest." *State v. Anspach*, 298 Or 375, 380, 692 P2d 602 (1984).[4] This court has determined from the commentary to ORS 133.555(2) that the statute requires that "the facts upon which the warrant is premised must lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *Id.* at 380-81. When addressing probable cause issues in cases where a warrant was issued, we confine our analysis to a "common-sense view of the affidavit" filed by the police officer. *State v. Coffey*, 309 Or 342, 346, 788 P2d 424 (1990). After reviewing Parks' affidavit, we conclude that the affidavit establishes probable cause to search defendant for evidence of alcohol.

Parks' affidavit asserts four facts: (1) defendant's breath had a strong odor of alcohol; (2) defendant admitted to consuming three gin and tonics sometime before the accident; (3) defendant rear-ended a vehicle while it was stopped in a turn lane; and (4) the officer, based on his personal observations, believed that defendant was under the influence of intoxicants. The essence of defendant's argument is that these facts do not show that he "was affected to a perceptible degree" by the alcohol at the time of the accident. We disagree. Given defendant's admission of alcohol consumption, Parks' assertion that defendant's breath had a strong odor of alcohol, the rear-end collision, and the officer's opinion that, at the time the officer applied for the warrant, defendant was under the influence, it was reasonable for the issuing magistrate to infer that the alcohol had affected defendant to a perceptible degree and that some of the alcohol would still be in defendant's person. Defendant's blood alcohol level could be relevant to the assault and criminal mischief charges. The issuing magistrate was therefore reasonable in concluding from the facts recited in Parks' affidavit that defendant had committed criminal offenses as to which defendant's blood alcohol level would be relevant and that alcohol would probably be found in his person. The warrant was supported by

---

[4] Probable cause to arrest is defined at ORS 131.005(11). Analysis under the federal constitution yields the same result. *Schmerber v. California, supra* n 2; *State v. Milligan, supra* n 2, 304 Or at 667-69 (explaining *Schmerber*).

probable cause under Oregon Constitution, Article I, section 9.[5]

The decision of the Court of Appeals is reversed in part and affirmed in part. The judgment of the district court is affirmed as to the charge of driving under the influence of intoxicants and as to the first blood sample with respect to the charges of assault and criminal mischief. It is reversed as to the second and third blood samples with respect to the charges of assault and criminal mischief. The case is remanded to the district court for further proceedings.

**UNIS, J.,** concurring.

A core requirement of Oregon statutory law (ORS 133.555(2)), Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the United States Constitution is that search warrants may not issue except on the independent finding of a neutral and detached judge (magistrate) that probable cause exists. While I join the opinion of the court, the question whether the affidavit in support of the search warrant establishes probable cause is very close and is troubling to me. However, this court and the Supreme Court of the United States have long expressed a strong preference for resort to the warrant process and have held that in marginal cases deference should be given to the decision of the judge to issue the warrant. *See, e.g., State v. Dunavant,* 250 Or 570, 574-75, 444 P2d 1 (1968); *United States v. Ventresca,* 380 US 102, 109, 85 S Ct 741, 13 L Ed 2d 684 (1965). Applying those principles in this case, I conclude that the present affidavit establishes the requisite probable cause under ORS 133.555(2), Article I, section 9, and the Fourth Amendment to support the issuance of the warrant for the second and third blood samples taken from defendant's person.

---

[5] Defendant makes no separate federal constitutional argument. The outcome under the federal constitution would be the same. *Cupp v. Murphy,* 412 US 291, 93 S Ct 2000, 36 L Ed 2d 900 (1973); *State v. Milligan, supra* n 2.