813

Argued and submitted March 18, reversed and remanded June 16, 2004

STATE OF OREGON,
*Appellant,*

*v.*

ROBERT MICHAEL SHANTIE,
*Respondent.*

MI02-1234; A120624

92 P3d 746

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Lawrence W. Erwin argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Deits,* Chief Judge, and Linder, Judge.

LINDER, J.

---

* Deits, C. J., *vice* Leeson, Judge pro tempore.

## LINDER, J.

The state appeals an order suppressing evidence of defendant's blood alcohol content, which was obtained by a blood test performed pursuant to a warrant. The trial court granted defendant's motion to suppress after concluding that the blood test violated defendant's right to refuse to submit to the test under the implied consent statutes. *See* ORS 813.100(2). We conclude that the test results are admissible and, accordingly, reverse.

The relevant facts are undisputed. In March 2002, police responded to a car accident in the middle of the night. At the scene, they found defendant's pickup truck, lying on its side, after it apparently had hit several parked cars. Defendant, the only person in the truck, was sitting in the driver's seat, unconscious, unresponsive, and bleeding heavily from lacerations on his head. When defendant regained consciousness, he was coherent and speaking in complete sentences, but his speech was "thick," slow, and deliberate, and he was aggressive with police, telling them to "get lost" and that he did not need their help.

After firefighters extricated defendant from his truck, they took him to the hospital, where he remained belligerent and had to be restrained by police and medical staff for treatment. When Officer Rogers asked defendant about the accident, he responded, "What accident?" Defendant then told Rogers that "some dude" had hit him, that he had not been driving, and that he would not answer questions without a lawyer present. Another police officer, Duff, arrested defendant for driving under the influence of intoxicants (DUII), ORS 813.010, after Duff and other officers smelled a "very strong" odor of alcohol coming from defendant and observed defendant acting belligerently and speaking in a thick, slow, deliberate manner. Duff next read defendant his *Miranda* rights and his rights under the implied consent statutes, then asked defendant for consent to test his breath, blood, or urine. Defendant responded, "Not at the moment." Defendant said that he would not consent until he could talk to his personal physician, and he again asked for an attorney. Police interpreted that statement as a refusal to consent.

Duff, investigating not only the DUII charge but also charges of reckless driving and criminal mischief based on the damage caused by the accident, telephoned a judge for a warrant to have defendant's blood drawn. Based on Duff's sworn statements, the judge issued a telephonic warrant to seize a blood sample from defendant.[1] A phlebotomist then drew two vials of blood from defendant, one for medical purposes and another pursuant to the warrant. The test of the sample drawn pursuant to the warrant yielded a blood alcohol content of 0.24 percent,[2] well over the legal limit. *See* ORS 813.010(1).

The state charged defendant with DUII, reckless driving, ORS 811.140, and two counts of second-degree criminal mischief, ORS 164.354. Defendant moved to suppress the blood test result on the ground that it was seized in violation of the implied consent statutes. *See* ORS 813.095 - 813.136. Specifically, defendant argued that the test ran afoul of ORS 813.100(2), which provides:

> "No chemical test of [a person arrested for DUII] shall be given [as provided in ORS 813.100(1)] * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."

The state countered that, under ORS 813.320, the blood test results were admissible despite ORS 813.100(2). ORS 813.320(2) provides, in part:

> "The provisions of the implied consent law shall not be construed by any court to limit the introduction of otherwise competent, relevant evidence of the amount of alcohol in the blood of a defendant in a prosecution for driving while under the influence of intoxicants if:
>
> "* * * * *
>
> "(b) The evidence is obtained pursuant to a search warrant."

The trial court also considered ORS 813.140, which provides:

---

[1] Defendant does not challenge the validity of the warrant.

[2] The blood drawn for medical purposes had a blood alcohol content of 0.268 percent.

"Nothing in ORS 813.100 is intended to preclude the administration of a chemical test described in this section. A police officer may obtain a chemical test of the blood to determine the amount of alcohol in any person's blood or a test of the person's blood or urine, or both, to determine the presence of a controlled substance or an inhalant in the person as provided in the following:

"(1) If, when requested by a police officer, the person expressly consents to such a test.

"(2) Notwithstanding subsection (1) of this section, from a person without the person's consent if:

"(a) The police officer has probable cause to believe that the person was driving while under the influence of intoxicants and that evidence of the offense will be found in the person's blood or urine; and

"(b) The person is unconscious or otherwise in a condition rendering the person incapable of expressly consenting to the test or tests requested."

After considering those statutes, the trial court granted defendant's motion to suppress. It concluded that the "specific" exceptions in ORS 813.140 trump the more general language of ORS 813.320(2). That is, according to the trial court, evidence seized pursuant to a warrant still must satisfy the requirements of ORS 813.140. Because the blood test in this case did not, the necessary remedy was suppression of the evidence as to all charges.

On appeal, the state argues that ORS 813.320(2)—enacted several years after ORS 813.100(2) and ORS 813.140[3]—indicates the legislature's intention to provide an additional exception to the general policy of the informed consent laws and thus does not conflict with the earlier statutes. As an alternative argument, the state contends that, even if the blood test results were properly suppressed as to the DUII charge, they should have been admitted with respect to the other charges.

_____

[3] *See* Or Laws 1999, ch 437, § 1 (codified as ORS 813.320); Or Laws 1985, ch 16, § 298 (codified as ORS 813.100); Or Laws 1985, ch 16, § 299 (codified as ORS 813.140).

In response, defendant relies on the "unambiguous" text of ORS 813.100(2)—"no * * * test shall be given" if a person refuses to consent—and asserts that acceptance of the state's position "would effectively judicially repeal ORS 813.100(2) and ORS 813.140." Defendant also offers an alternative rationale for affirming the trial court—that violation of "defendant's constitutional right to privately confer with an attorney" justifies suppressing the blood test results.[4] The state counters that, because police obtained the blood pursuant to a warrant and defendant had no right to refuse to submit to the warrant, he was not entitled to consult with an attorney before the warrant was executed.

■ We first address the state's assignment of error. ORS 813.100(2) prohibits chemical testing of a person arrested for DUII without that person's consent. But the statute, by its express terms, does not address the issue of the remedy for a violation of the statute. Consequently, at best, the prohibition on nonconsensual chemical testing provides a basis to *imply* suppression as a remedy. *See generally State v. Moylett*, 313 Or 540, 546-47, 836 P2d 1329 (1992) (recognizing longstanding principle that blood test evidence obtained in violation of statutory implied consent procedures is subject to suppression if the legislature does not otherwise so provide).

ORS 813.320(2), however, expressly precludes suppression as a remedy in DUII prosecutions under some circumstances. The statute does so by declaring that provisions of the implied consent law—which includes ORS 813.100(2) and ORS 813.140—"shall not be construed" to limit the admissibility of competent, relevant blood test evidence in a DUII prosecution when obtained pursuant to a search warrant.[5] With that clear directive, ORS 813.320 is not inconsistent with ORS 813.100(2) or ORS 813.140. To be sure, by limiting the remedies for a violation of the implied consent law,

---

[4] Defendant styles his alternative ground as a "cross-assignment of error" but, because the trial court never ruled on the matter, it is more properly understood as an alternative ground for affirmance. *See* ORAP 5.57 (cross-assignments of error are directed to trial court rulings).

[5] *See also* ORS 136.432 (court "may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision" unless exclusion is required under the state or federal constitutions, rules of evidence concerning privileges and the admissibility of hearsay, or the rights of the press).

ORS 813.320(2) arguably dilutes the effectiveness of the prohibition on chemical testing of blood without consent contained in ORS 813.100(2). But that is a choice the legislature is entitled to make. ORS 813.320(2) therefore must be given effect. The trial court erred in suppressing the evidence on that ground.

■ Defendant's alternative ground for affirmance also fails. Defendant contends that he was constitutionally entitled to consult with an attorney before deciding whether to consent to a test of his blood. That argument misses the mark because, after the warrant was issued, defendant had no choice in the matter. The cases that defendant cites in support of the right to counsel before a blood draw only apply to situations in which the state seeks to introduce blood evidence under the implied consent laws—that is, when police do not have a search warrant. *See, e.g., State v. Durbin*, 335 Or 183, 63 P3d 576 (2003); *State v. Spencer*, 305 Or 59, 750 P2d 147 (1988). Under those circumstances, where significant legal consequences flow from a defendant's decision whether or not to consent to chemical testing, a meaningful opportunity to consult with an attorney is required. This, however, is not such a case. Defendant had no right—constitutional or otherwise—to confer with an attorney before police executed the warrant to draw his blood.

Accordingly, the trial court erred in suppressing the blood test evidence as to all charges. Given our disposition of this case, we need not address the state's alternative argument.

Reversed and remanded.