Argued and submitted September 17, 2009, affirmed April 14, 2010

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# RYAN ERIC HAYS,
*Defendant-Appellant.*

Malheur County Circuit Court
06117943C; A135729

228 P3d 731

John Henry Hingson III argued the cause and filed the brief for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. On the brief were John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Jamie K. Contreras, Assistant Attorney General.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.*

SERCOMBE, J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII), ORS 813.010(4). Defendant contends that the trial court erred in failing to suppress evidence of a chemical breath test of intoxication, arguing that his consent to take that test was unlawfully obtained. We affirm the judgment because the evidence of the breath test is admissible even if defendant's consent resulted from unlawful police actions.

■　　We review the denial of a motion to suppress for errors of law and are bound by the trial court's factual findings that are supported by sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). Thus, we take the salient facts in this case primarily from the trial court's findings.[1]

Early one morning, defendant crashed a truck and horse trailer by driving through a "T" intersection and into a field in rural Malheur County. Deputy Romans arrived at the accident scene at approximately 6:20 a.m., joining emergency medical personnel who were present. Defendant was sitting in the driver's seat of the truck, bleeding from facial cuts sustained in the accident. Romans observed that defendant smelled of alcohol and had watery, bloodshot eyes. He asked defendant to step out of the vehicle to perform field sobriety tests. Defendant was unsteady on his feet and leaned against the vehicle to keep his balance. There was a full beer can on the floor of the vehicle. Romans administered the horizontal gaze nystagmus (HGN) test, and defendant's eye reactions suggested that he was under the influence of alcohol. Due to defendant's injuries, Romans did not administer any other field sobriety tests but, given the circumstances, concluded that probable cause existed to arrest defendant for the crime of DUII.

---

[1] Those facts are also consistent with the record created in companion administrative proceedings for the suspension of defendant's driver's license for failing a chemical breath test. *Hays v. DMV*, 228 Or App 689, 209 P3d 405, *modified on recons*, 230 Or App 559, 216 P3d 902 (2009). The court in *Hays* reversed the suspension of defendant's driver's license because the breath test was obtained in violation of statutory requirements.

Romans arrested defendant on that charge after defendant was taken to the hospital for treatment of his wounds. At the hospital, Romans read defendant the information on implied consent rights and responsibilities required to be given by ORS 813.130,[2] and then asked defendant if he would take the breath test. Defendant declined to do so. Romans inquired if defendant would consent to blood and urine tests, and again defendant refused. After Romans stated that he was going to obtain a search warrant for blood and urine samples, defendant consented to a breath test. Defendant asked to speak with Schmeer, a retired Oregon State trooper and family friend. After speaking with Schmeer in private, defendant again consented to the breath test.

After defendant's facial cuts were stitched, Romans took him to the sheriff's office at the county jail. Romans informed defendant that he could speak with an attorney and gave him a telephone directory and access to a telephone. Defendant declared that he did not want to talk to an attorney and wanted to take the breath test. After a 15-minute observation period, Romans administered the test at approximately 9:04 a.m. Defendant registered a blood alcohol content of .09 percent, above the level sufficient to support a conviction for DUII under ORS 813.010(1)(a).

Before trial, defendant moved to suppress the result of the breath test. Defendant alleged that Romans failed to comply with the implied consent statutes by continuing to seek a breath test consent after an initial refusal contrary to ORS 813.100(2),[3] by requesting a urine test without drug recognition qualifications or reasonable suspicion of driving under the influence of controlled substances as required by ORS 813.131,[4] and by failing to inform defendant that he had

[2] ORS 813.100(1) requires that a person arrested for DUII "be informed of the consequences and rights as described under ORS 813.130" before administration of a chemical test of that person's breath. ORS 813.130, in turn, sets out various disclosures including that, if a person refuses or fails the test, "evidence of the refusal or failure may also be offered against the person" and "the person's driving privileges will be suspended."

[3] ORS 813.100(2) provides that "[n]o chemical test of the person's breath or blood shall be given * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."

[4] ORS 813.131(2) requires a police officer to be trained and certified in recognition of drug impaired driving and to have reasonable suspicion of driving under the influence of a controlled substance before requesting a urine sample test.

the opportunity to be retested at his own expense.[5] Defendant also claimed that his consent was coerced and insufficient to excuse the need to obtain a search warrant for the breath test under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The coercion purportedly resulted from the threat to involuntarily take blood and urine samples from defendant as well as the provision of the statutorily required explanation of the negative consequences of a refusal to consent.

The state responded that any violation of the implied consent statutes does not require suppression of the breath test results under ORS 136.432;[6] that defendant's consent was voluntary and excused the need for a warrant; and that a warrant was alternatively not needed because of the exigent circumstances of the immediate dissipation of alcohol from defendant's bloodstream. Defendant asserted that the presence of alcohol in the blood does not automatically constitute exigent circumstances.

An evidentiary hearing was held on the motion to suppress. No evidence was introduced regarding the amount of time needed to obtain a search warrant under the circumstances or the potential reduction of defendant's blood alcohol content during that period. Following the hearing, the trial court excluded the results of the HGN test because the test was not conducted properly and suppressed statements made by defendant after his arrest because of the failure to provide *Miranda* warnings. The court concluded that probable cause existed to arrest defendant for DUII without that evidence and that the results of the breath test were admissible notwithstanding any violation of the implied consent statutes. The court further determined that defendant consented to the test and that the consent was not coerced. Because the

---

[5] One of the disclosures that ORS 813.130(2) requires to be given to a DUII arrestee before a breath test is that, after the test, "the person will have a reasonable opportunity, upon request, for an additional chemical test for blood alcohol content to be performed at the person's own expense by a qualified individual of the person's choosing."

[6] ORS 136.432 provides that a "court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by" the state or federal constitution, the "rules of evidence governing privileges and the admission of hearsay," or the "rights of the press."

court found that defendant consented to the test, it determined that "there is no need for a search warrant and thus no need [to determine the existence of] exigent circumstances."

On appeal, defendant does not dispute that he was arrested with probable cause that he unlawfully drove under the influence of alcohol. But defendant reiterates that illegal threats to obtain a warrant for his urine, together with Romans's other violations of the implied consent statutes, rendered defendant's consent to the breath test involuntary. We conclude that the test results were admissible under ORS 136.432, notwithstanding the implied consent statutes, and that defendant's consent to the test was not needed in order to conduct the test without a warrant, because the requirement of a warrant was excused in light of exigent circumstances.

■ Defendant contends that Romans's alleged violations of the implied consent statutes require suppression of the breath test results for two reasons. First, defendant argues that the statutory violations by themselves require suppression of the results of the test. That argument, however, is foreclosed by *State v. Silbernagel*, 229 Or App 688, 215 P3d 876 (2009). In *Silbernagel*, the defendant asserted that the arresting police officer threatened a forcible extraction of blood, in contravention of ORS 813.140, in order to obtain a breath test consent. The court held that, under ORS 136.432, a violation of ORS 813.140 is not grounds for suppression of breath test results:

> "We need not consider whether the arresting officer in this case violated the implied consent laws, because, even assuming that he did, we agree with the state that ORS 136.432 precludes suppression of the evidence. That statute prevents a court from excluding relevant and otherwise admissible evidence on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by the state or federal constitution, a rule of evidence governing privileges or the admission of hearsay, or the rights of the press. 'In other words, unless the legislature has created an express exclusionary remedy for a statutory violation, a court may not exclude relevant and otherwise admissible evidence in a criminal proceeding simply because it was obtained in violation of a statute.'

> *State v. Bloom*, 216 Or App 245, 249, 172 P3d 663 (2007),
> *rev den*, 344 Or 280 (2008)."

*Silbernagel*, 229 Or App at 690-91. There are no statutes requiring exclusion of the results of the breath test because of the violations of ORS 813.100, ORS 813.130, or ORS 813.131, as asserted by defendant, or that make compliance with those statutes a foundational requirement for admissibility of the test results. The statutes alleged to have been violated do not "specify any consequence for failure to comply with [their] requirements" or "bear on the validity, reliability, relevance, or authenticity" of a breath test. *State v. Warner*, 181 Or App 622, 634, 47 P3d 497, *rev den*, 335 Or 42 (2002). Defendant's first argument for exclusion of the test results because of particular violations of the implied consent statutes fails.[7]

■■      Defendant's second argument is that the alleged violations of the implied consent statutes made his consent involuntary and ineffective to excuse the need for a search warrant under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[8] The obtaining and testing of defendant's breath sample was a search and seizure under those constitutional provisions. Warrantless searches and seizures are *per se* unreasonable unless the state proves an exception to the warrant requirement. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988). The state argued in the suppression proceedings that the search and seizure was reasonable because defendant gave consent and alternatively because the search and seizure fell within the exigent circumstances exception to the warrant requirement. In *State v. Nagel*, 320 Or 24, 33, 880 P2d 451 (1994) (quoting *State v. Stevens*, 311 Or 119, 126, 806

---

[7] In concluding that the purported violations of the implied consent statutes would not preclude admission of the breath test results, we do not imply that the statutes were violated in this case. *See State v. Kirsch*, 215 Or App 67, 168 P3d 318 (2007) (ORS 813.100(2) does not preclude the giving of a breath test in circumstances in which a driver who initially refuses to take a breath test is later invited to reconsider and agrees to take the test.).

[8] Article I, section 9, provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *." Similarly, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

P2d 92 (1991)), the Supreme Court held that "an exigent circumstance 'is a situation that requires the police to act swiftly to prevent * * * the destruction of evidence.' "

The parties largely direct their arguments on appeal to the issue of whether the trial court was correct in concluding that defendant's consent was not coerced. We affirm on alternative grounds—that exigent circumstances excused the need to obtain a search warrant. We will affirm a trial court on alternative grounds if

"(1) * * * the facts of record [are] sufficient to support the alternative basis for affirmance; (2) * * * the trial court's ruling [is] consistent with the view of the evidence under the alternative basis for affirmance; and (3) * * * the record materially [is] the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below."

*Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001). Here, the justification for the search and seizure because of exigent circumstances was raised by the state in the suppression proceedings and the record of probable cause to arrest defendant for DUII was established below and is sufficient to justify the exigency under *State v. Machuca,* 347 Or 644, 227 P3d 729 (2010).

In *Machuca,* a warrantless blood draw after the defendant's arrest for DUII was justified under Article I, section 9, because of exigent circumstances. There, the defendant argued that the state was required to prove that it could not have obtained a search warrant without losing the blood alcohol content evidence in order to prove exigent circumstances. He relied on *State v. Moylett,* 313 Or 540, 550-51, 836 P2d 1329 (1992):

"The exigency created by the dissipating evidence of blood alcohol, however, did not make the blood sample seizures *per se* reasonable under Article I, section 9. The state was still required to prove, in order to justify the warrantless extraction of defendant's blood, that it could not have obtained a search warrant 'without sacrificing the evidence' and that the blood sample that it obtained had been extracted 'promptly.' *State v. Milligan,* [304 Or 659, 666, 748 P2d 130 (1988)]."

The Supreme Court overruled *Moylett* in *Machuca* and held that no specific proof of the time necessary to obtain a search warrant or the dissipating evidence of blood alcohol content was necessary in order to establish exigent circumstances and excuse the need for a search warrant under Article I, section 9:

"After examining the cases set out above, we conclude that the exigent circumstances analysis set out in *Moylett*, which required the state to prove 'that it could not have obtained a search warrant without sacrificing the evidence,' unnecessarily deviated from this court's established case law. Until *Moylett*, the court's focus had been on the exigency created by blood alcohol dissipation. *Moylett*, however, shifted that focus away from the blood alcohol exigency itself and onto the speed with which a warrant presumably could have issued in a particular case. In our view, that shift was unsupported by the cases that preceded it, and we disavow it now.

"*Milligan* was not, and is not now, to the contrary. We agree with the observation in *Milligan* that a '[w]arrantless seizure and search under such circumstances therefore is constitutionally justified, unless a warrant can be obtained without sacrificing the evidence.' 304 Or at 665-66. *Milligan*, however, illustrates that when probable cause to arrest for a crime involving the blood alcohol content of the suspect is combined with the undisputed evanescent nature of alcohol in the blood, those facts are a sufficient basis to conclude that a warrant could not have been obtained without sacrificing that evidence."

*Machcua*, 347 Or at 656.

The same result obtains here. Probable cause to arrest defendant for DUII, combined with the undisputed evanescent nature of alcohol in the blood, excused the need for a search warrant under Article I, section 9. That same exigency excused the need for a warrant under the Fourth Amendment. *Schmerber v. California*, 384 US 757, 771, 86 S Ct 1826, 16 L Ed 2d 908 (1966). The trial court did not err in refusing to suppress the results of the chemical blood test.

Affirmed.