Argued and submitted July 31, reversed and remanded September 19, 2007

## STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

## KYLE BURKE KIRSCH,
*Defendant-Respondent.*

Tillamook County Circuit Court
067012; A132400

168 P3d 318

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Kristin Carveth, Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

In this prosecution for driving under the influence of intoxicants (DUII), ORS 813.010, the state appeals from a pretrial order suppressing the results of a breath test. ORS 138.060(1)(c). The trial court concluded that ORS 813.100(2) prohibits an officer from giving a breath test after a driver has initially "refused" to take the test, even if the driver, in response to the officer's renewed request, subsequently reconsiders and agrees to take the test. We conclude that the trial court erred in so construing and applying ORS 813.100(2). Consequently, we reverse and remand.

The following facts, as found by the trial court, are supported by evidence in the record. *See State v. Stroup*, 147 Or App 118, 120, 935 P2d 438 (1997) (describing standard of review). On February 4, 2006, Tillamook Police Officer Steven Small arrested defendant on suspicion of DUII. At the police station, Small read defendant the statutorily pre-scribed implied consent rights and consequences, ORS 813.130, checked defendant's mouth, and observed defendant for at least 15 minutes. At the end of that period—but before Small had ensured that the Intoxilyzer power switch was on or pushed the machine's "start" button—Small asked defen-dant if he would be willing to submit to a breath test. Defen-dant responded, "I don't want to take a test and go fuck your-self." After defendant made that comment, Small wrote "refused" in the "Comments" section of the Oregon State Police "Operator's Checklist for Breath Testing Equipment Intoxilyzer 5000."[1]

---

[1] Although Small testified that he did not regard defendant's response to be a refusal, defendant contended that that notation demonstrated that Small did, in fact, deem defendant's response to be an effective refusal. The trial court adopted defendant's view, stating that Small "understood the statement to be a refusal."

On appeal, the state disputes the trial court's determination in that regard. Specifically, the state emphasizes that, after making the "refused" notation, Small continued with the DUII "checklist steps" and waited until the Intoxilyzer machine had completed its "diagnostic preparation" before confirming whether defendant was willing to take the test.

Given our analysis below, we need not address that contention. As we explain, even if Small deemed defendant's statement to be a firm "refusal," defendant, upon Small's reinitiation and revisiting of the matter, was free to reconsider his prior refusal and agree to take the test. *See* 215 Or App at 71-75.

Small continued to proceed with the items on the DUII "checklist"—he confirmed that the Intoxilyzer's power switch was on and that the instrument was out of the "not ready" mode, pushed the "start test" button, and inserted the DUII test record card. When the Intoxilyzer machine was ready to accept a breath sample, displaying the "Please blow" instruction, Small again asked defendant if he was willing to submit to a breath test, telling him, "If you don't want to take one, it's going to be considered a refusal." Defendant responded that he would take the test. After a "restart," necessitated by radio interference with the machine's diagnostic function, the test revealed defendant's blood alcohol content to be .25 percent.

Defendant moved to suppress the results of the breath test, arguing that the administration of the test violated ORS 813.100(2). ORS 813.100 provides, in part:

"(1) Any person who operates a motor vehicle upon premises open to the public or the highways of this state shall be deemed to have given consent, subject to the implied consent law, to a chemical test of the person's breath * * * for the purpose of determining the alcoholic content of the person's blood if the person is arrested for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 * * *. A test shall be administered upon the request of a police officer having reasonable grounds to believe the person arrested to have been driving while under the influence of intoxicants in violation of ORS 813.010 * * *. Before the test is administered the person requested to take the test shall be informed of consequences and rights as described under ORS 813.130.

"(2) No chemical test of the person's breath * * * shall be given, under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 * * * if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."

Defendant argued that ORS 813.100(2) "expressly prohibits an officer from giving an arrested person a second opportunity to take a breath test once he/she has refused to take a test after being advised of the rights and consequences

of such a refusal." Thus, in defendant's view, "[I]n simple terms you only get one chance and, if you refuse, you refuse." The state responded that defendant's initial statement was not an effective "refusal," and that, in all events, nothing in ORS 813.100(2) explicitly prohibits "an officer [from] asking one more time."

The trial court agreed with defendant:

"The Court concludes that ORS 813.100(3) [*sic*] applies to this situation. The defendant was arrested, he was read his rights and consequences, he refused and the Officer understood the statement to be a refusal. Ex. 103.

"Defendant's clear statement, viewed in the context of ORS 813.100(3) [*sic*], was a decisive event which ended the transaction between the officer and the arrestee.

"The Court concludes that the second request for an intoxilyzer violated ORS 813.100(3) [*sic*]."

Consequently, the court suppressed the breath test results.

On appeal, the state argues that there was no violation of ORS 813.100(2) for either of two reasons. First, and contrary to the trial court's determination, defendant's initial response was not—or, at least, need not have been treated as—an effective "refusal." Second, in all events, Small remained free—at the very least until the Intoxilyzer machine was ready to accept a sample—to noncoercively revisit defendant's willingness to take the test and, if that occurred, defendant could reconsider and take the test. The state contends that, to construe and apply ORS 813.100(2) so as to preclude such noncoerced reconsideration would contradict the fundamental overarching purposes of the statutory "informed consent" scheme.[2]

Defendant responds that the content (and vehemence) of his initial response to Small, coupled with Small's

---

[2] The state also contends that, given the operation of ORS 136.432, suppression is not a proper remedy for violations of ORS 813.100(2). *Cf. State v. Thompson-Seed,* 162 Or App 483, 489, 986 P2d 732 (1999) (addressing application of ORS 136.432); *accord State v. Creson,* 33 Or App 369, 372, 576 P2d 814 (1978) (concluding that, as a matter of negative implication, the statutory antecedent to the current ORS 813.320(1) precluded the admission in DUII trials of "[e]vidence obtained in violation of implied consent procedures"). Given our analysis and disposition, we need not resolve that question.

"refused" notation, was ample basis for the trial court's determination that Small "understood the response to be a refusal." Further, defendant contends that, for purposes of ORS 813.100(2), once a defendant unequivocally refuses to take the test, that refusal is immutable and irrevocable, precluding any reopening of the matter. Bluntly: "Once a refusal, always a refusal."

As amplified below, we agree with the state's second, independently sufficient argument. Accordingly, we do not address the first.

The success of the state's second argument turns on the proper construction of ORS 813.100(2)—particularly, the phrase "if the person refuses the request * * * to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130." We begin by assessing that text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Defendant posits, and the trial court agreed, that "refusal" for purposes of ORS 813.100(2) is, essentially, a historical determination: If, at any time after having been informed of statutory rights and consequences, the driver refused to take the test, that refusal was automatically, immediately, and absolutely preclusive. Whatever occurred thereafter is legally immaterial. Conversely, the state contends that "refusal" must be determined by reference to the circumstances existing as of the time the test is given—that is, is there an *extant* refusal? If not—if, notwithstanding an earlier refusal, the suspect is, in fact, willing to take the test when it is administered—there is no violation of ORS 813.100(2). In that regard, the state emphasizes that nothing in ORS 813.100(2) or any other statute precludes an officer from inviting a suspect to reconsider a refusal, or a suspect from acting on such an invitation.[3]

---

[3] The state acknowledges that, in *Bergstrom v. MVD*, 104 Or App 141, 799 P2d 673 (1990), which involved an administrative suspension of the respondent's driving privileges because he refused to submit to a breath test, we held that, where the driver refused to take the test and then unilaterally sought to rescind that refusal, the officer was not obligated to administer the test. That circumstance differs materially from this case where, even assuming defendant's initial statement was a refusal, Small reinitiated conversation on the matter and invited defendant's

■ In the abstract, either party's construction is linguistically plausible. However, broader statutory context—the legislatively intended functions of the informed consent scheme generally, and ORS 813.100(2) particularly, as described by the Oregon Supreme Court—conclusively militates in favor of the state's construction. The informed consent statutory scheme is designed to enforce a driver's legal obligation to submit to a breath test based on his or her prior consent. "The law is designed to overcome the possibility of physical resistance, despite legal consent, without resort to physical compulsion." *State v. Newton*, 291 Or 788, 793, 636 P2d 393 (1981). Thus, the requirement in ORS 813.100(1) that the driver be informed of the statutorily prescribed rights and consequences of refusal is calculated "to nonforcibly enforce the driver's previous implied consent." *Id.* That is, that requirement is intended to provide "additional incentive, short of physical compulsion" to induce the driver to submit to the breath test. *State v. Spencer*, 305 Or 59, 71, 750 P2d 147 (1988). *Cf. State v. Weishar*, 78 Or App 468, 477, 717 P2d 231, *rev den*, 301 Or 338 (1986) ("Since its inception, Oregon's implied consent statute has contained various sanctions designed to coerce submission to a breath test.").

■ Still, although the statutory scheme is designed to strongly encourage drivers to submit to a breath test, the driver ultimately retains the *"physical power* to refuse." *Newton*, 291 Or at 792 (" '[R]efusal' describes a physical reality. By implying consent, the statute removes the *right* of a licensed driver to lawfully refuse, but it cannot remove his or her *physical power* to refuse." (Emphasis in original.)). ORS 813.100(2) is intended to preclude physical compulsion and to forestall the risks, including the potential for violence, and practical difficulties of forcible administration of a breath test to an unwilling driver:

reconsideration. Nothing in *Bergstrom* precludes the administering officer from doing so. *Cf. State v. McHenry*, 205 Or App 310, 312-14, 134 P3d 1016 (2006) (holding that the DUII defendant was not afforded a reasonable opportunity to consult with counsel where (1) the defendant initially said "no" when asked whether he would submit to a breath test, (2) a short time later, the officer "reopened negotiations with defendant by asking him a second time whether he would submit to the breath test," and (3) when the defendant replied, "No, I'm not blowing until I talk to my attorney," the officer entered the defendant's response as a refusal to take the test).

" 'The obvious reason for acquiescence in the refusal of such a test by a person who as a matter of law is 'deemed to have given his consent' is to avoid the violence which would often attend forcible tests upon recalcitrant inebriates. * * *

" '\* \* \* \* \*

" '\* \* \* It is firmly established that a drunken driver has no *right* to resist or refuse such a test [citations]. It is simply because such a person has the *physical power* to make the test impractical, and dangerous to himself and those charged with administering it, that it is excused upon an indication of his unwillingness.' "

*Newton*, 291 Or at 792-93 (quoting with approval *Bush v. Bright*, 264 Cal App 2d 788, 790, 792, 71 Cal Rptr 123, 124-25 (1968) (emphasis in *Bush*) (brackets in original)). *See also Spencer*, 305 Or at 71 ("A driver \* \* \* can *physically* refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission." (Emphasis in original.)).

■     The state's construction of ORS 813.100(2) promotes the broader purposes of ORS 813.100 in its entirety and comports with the specific purpose of subsection (2) itself. Permitting officers to invite, and encourage, drivers to reconsider refusals enhances the likelihood that drivers will, ultimately, agree to submit to a breath test. Further, when a driver is, in fact, willing to take the test, notwithstanding an earlier refusal, the vices of forcible compulsion, including the risks and dangers associated with the use of physical force, are not implicated. Conversely, defendant's construction would limit drivers' opportunity to submit to breath tests, even when they are ultimately willing to do so, without advancing the protective purposes of ORS 813.100(2).[4]

We conclude that, given the statutory context, as elucidated in *Newton* and *Spencer*, only the state's construction of ORS 813.100(2) plausibly comports with the legislature's intent. *See Lane County v. LCDC*, 325 Or 569, 578, 942

---

[4] We note, parenthetically, that, if defendant were correct, then a driver who initially refused to take a breath test but who, upon being invited to reconsider, took the test, would be subject to an automatic administrative suspension of driving privileges, ORS 813.100(3), because of the "refusal"—notwithstanding that he or she ultimately actually took the test, and regardless of the result of that test.

P2d 278 (1997) ("[W]e do not look at one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole."). That is, ORS 813.100(2) does not preclude the giving of a breath test in circumstances in which a driver who initially refuses to take a breath test is later invited to reconsider and agrees to take the test. Consequently, the trial court erred in allowing the motion to suppress.

Reversed and remanded.