Argued and submitted April 11, OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) held valid September 24, 2008

# FISHERMEN AGAINST IRRESPONSIBLE REALLOCATION, INC.,
an Oregon nonprofit corporation;
Jeffrey D. Mulkey;
Trilogy Crab Pots, Inc.,
a Washington corporation;
and West Bay Fisheries, Inc.,
an Oregon corporation,
*Petitioners,*

*v.*

# FISH AND WILDLIFE COMMISSION,
*Respondent.*

Fish and Wildlife Commission
A135023

193 P3d 1014

Gregory A. Chaimov argued the cause for petitioners. With him on the briefs were John A. DiLorenzo, Jr., and Davis Wright Tremaine LLP.

Richard D. Wasserman, Attorney-in-Charge, Civil/ Administrative Appeals, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Pursuant to ORS 183.400,[1] petitioners challenge the validity of two administrative rules of the State Fish and Wildlife Commission (the commission) specifying the number of crab pots that may be used by commercial fishing vessels. Petitioners argue that we should declare OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) (2007), *renumbered as* OAR 635-005-0055(7)(d) (2008),[2] invalid because the commission exceeded its statutory authority in adopting those rules. We conclude that the commission acted within the authority delegated to it by the legislature and, thus, that the rules are valid.

With certain exceptions not applicable here, an individual must obtain a permit "to operate a vessel in the ocean Dungeness crab fishery * * *." OAR 635-006-1015(1)(g)(A). Under *former* OAR 635-005-0055(6), it is unlawful to use commercial crab pots unless the pots are marked with Oregon Department of Fish and Wildlife (ODFW) buoy tags. *Former* OAR 635-005-0055(6)(d) provides that ODFW buoy tags are issued to permit owners in accordance with the limits set forth in OAR 635-006-1015(1)(g)(E), which states:

"Effective December 1, 2006, the number of crab pots allocated to a permit required under section (A) above will be determined as follows:

"(i)     The allocation will be based on documented landings of Ocean Dungeness crab into Oregon, Washington (excluding landings from the Puget Sound Fishery), or California, using valid Oregon fish receiving tickets, or equivalent valid documents from the states of Washington or California, from December 1, 1995 through August 14, 2001;

---

[1] ORS 183.400(1) provides:

"The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court."

[2] For ease of reference, we refer to the 2007 version of the rule.

"(ii)   The crab pot allocation will be the highest number of pots the vessel qualifies for during the six qualifying seasons, December 1 of one year through September 15 of the next year (except through August 14, in 2001);

"(iii)   A crab pot allocation of 200 shall be assigned to a permit with landings less than 15,020 pounds in the 1995 to 1996 season, and 4,010 pounds in the 1996 to 1997 season, and 5,170 pounds in the 1997 to 1998 season, and 7,083 pounds in the 1998 to 1999 season, and 13,160 pounds in the 1999 to 2000 season, and 8,940 pounds in the 2000 to 2001 season;

"(iv)   A crab pot allocation of 300 shall be assigned to a permit with minimum landings of 15,020 pounds in the 1995 to 1996 season, or 4,010 pounds in the 1996 to 1997 season, or 5,170 pounds in the 1997 to 1998 season, or 7,083 pounds in the 1998 to 1999 season, or 13,160 pounds in the 1999 to 2000 season, or 8,940 pounds in the 2000 to 2001 season; and

"(v)   A crab pot allocation of 500 shall be assigned to a permit with minimum landings of 89,020 pounds in the 1995 to 1996 season, or 35,180 pounds in the 1996 to 1997 season, or 39,350 pounds in the 1997 to 1998 season, or 49,450 pounds in the 1998 to 1999 season, or 78,400 pounds in the 1999 to 2000 season, or 37,030 pounds in the 2000 to 2001 season."

The commission acknowledged in the fiscal impact statement included in its notice of proposed rulemaking that, at least initially, operators of small vessels will have a competitive advantage over those of large vessels under this regulatory system.

We may declare a rule invalid in the context of a challenge under ORS 183.400(4) "only if" the rule

"(a)   Violates constitutional provisions;

"(b)   Exceeds the statutory authority of the agency; or

"(c)   Was adopted without compliance with applicable rulemaking procedures."

Here, petitioners do not argue that OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) are unconstitutional or that the commission failed to comply with

applicable procedures. ORS 183.400(4)(a), (c). Rather, they contend that the legislature put in place its own regulatory system—one that does not authorize the commission to adopt a regulatory system that reallocates crab pots in a manner that favors the operators of small vessels over those of larger vessels—and that the rules at issue here are in direct conflict with that system. Thus, the only issue before us is whether the commission "exceed[ed its] statutory authority" in adopting the rules. ORS 183.400(4)(b).

In resolving that question, our task is to determine

"whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute."

*Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984). For purposes of that inquiry, "[t]he record on review * * * consists of two things only: the wording of the rule itself (read in context) and the statutory provisions authorizing the rule." *Wolf v. Oregon Lottery Commission*, 344 Or 345, 355, 182 P3d 180 (2008); *see also* ORS 183.400 (judicial review is limited to examination of the rule, authorizing statute, and documents necessary to determine compliance with procedural requirements).

We turn, then, to the applicable statutory context. The legislature established the general duties and rulemaking authority of the commission in ORS 506.119:

"(1)  The State Fish and Wildlife Commission has the authority to formulate and implement the policies and programs of this state for the management of food fish, and may perform all acts necessary to administer and carry out the provisions of the commercial fishing laws.

"(2)  In accordance with any applicable provision of ORS chapter 183, the commission may promulgate rules to carry out the provisions of the commercial fishing laws."

The food fish management goals of this state, as established by the legislature, include the "equitable utilization of available food fish." ORS 506.109(3). The commercial fishing laws consist of "[a]ll laws enacted for the protection, propagation

and preservation of food fish or for the protection and development of commercial fisheries in this state," specifically including ORS chapter 508. ORS 506.001.

The legislature specifically addressed the Dungeness crab fishing industry in ORS chapter 508. ORS 508.921 provides:

> "The Legislative Assembly finds that the Oregon ocean Dungeness crab fishery is overcapitalized. This overcapitalization has led to economic destabilization of the ocean Dungeness crab industry and the coastal communities relying on the crab harvest and can cause excessive harvesting pressure on Oregon's ocean Dungeness crab resources. Since the state legislatures of Washington and California have enacted programs restricting participation in the ocean Dungeness crab fishery, the possibility of increased effort in Oregon coastal waters by displaced vessels is increased. Notwithstanding any other provision of the commercial fishing laws, in order to promote the economic well-being of the Oregon ocean Dungeness crab industry and the coastal communities relying on the harvest, to protect the livelihood of participants in the Oregon ocean Dungeness crab fishery who have historically and continuously participated in the ocean Dungeness crab fishery and to prevent a concentration of fishing effort, *the State Fish and Wildlife Commission by rule shall establish a system for restricting participation in the Oregon ocean Dungeness crab fishery.*"

(Emphasis added.)

Given the breadth of the authority delegated by the legislature under ORS 506.119 and ORS 508.921, we conclude, as amplified below, that the commission acted well within that authority when it established the crab pot allocation system set forth in OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d). First, and more generally, the crab pot allocation system is entirely consistent with the overarching statutory goal of promoting the equitable utilization of available food fish as pronounced by the legislature in ORS 506.109(3).

Second, and particularly, the legislature expressly determined in ORS 508.921 that the Oregon ocean Dungeness crab fishery is overcapitalized. It directed the

commission to establish, by rule, a system for restricting participation in the fishery with the goal of, among other things, preventing a "concentration of fishing effort[.]" ORS 508.921. That is precisely what the commission did when it adopted the crab pot allocation system at issue in this appeal. It is not our role to second-guess the quasi-legislative policy decisions of an agency where, as here, such decisions are clearly authorized by the legislature.[3] *Springfield Education Assn. v. School Dist.*, 290 Or 217, 229, 621 P2d 547 (1980).

Further, while the legislature directed the commission to "establish a system for restricting participation in the Oregon ocean Dungeness crab fishery[,]" ORS 508.921, the legislature made its own contribution to that system in ORS 508.926 to 508.936. In ORS 508.926, the legislature required that an individual obtain a vessel permit to participate in commercial crab fishing. In ORS 508.931, the legislature established the initial eligibility requirements for participation in the ocean Dungeness crab fishery. Finally, in ORS 508.936, the legislature set forth certain limits on the transfer of vessel permits based on vessel length. Those provisions, individually and collectively, complement—and do not contradict—the commission's authority to promulgate the regulations challenged here.

Petitioners argue, nevertheless, that the legislature, in effect, occupied the field when it enacted ORS 508.926 to 508.936, thus withholding from the commission all authority to make its own contribution to the "system for restricting participation" in the Dungeness crab fishery. ORS 508.921. Petitioners' argument cannot be squared with the plain language of ORS 508.941(1), which provides that "[t]he system [for restricting participation] established under ORS 508.921 *shall include any other provisions for participation that the State Fish and Wildlife Commission considers appropriate.*" (Emphasis added.) Given that broad grant of authority, the commission's authority transcends that which is necessary merely to implement only the specific statutory provisions of

---

[3] Because of our conclusion that OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) are authorized under ORS 506.119 and ORS 508.921, we need not address petitioners' argument that the commission lacked authority to adopt those rules under ORS 506.755.

ORS chapter 508. *See, e.g.*, *Springfield Education Assn.*, 290 Or at 229 (legislature may delegate to agency "almost plenary authority" to develop regulatory schemes).

Petitioners further argue that the phrase "for participation" in ORS 508.941(1) permits the commission only to adopt rules *expanding* participation, not those that restrict participation. Petitioners reason, literally, that "the phrase is 'for participation,' not 'for restriction.' " That argument conflicts with the legislature's charge to the commission to "establish a system for *restricting* participation[.]" ORS 508.921 (emphasis added). In addition, ORS 508.941(1) provides that "[t]he system established under ORS 508.921 shall include any other *provisions* for participation" deemed appropriate by the commission. (Emphasis added.) The term "provisions," as used in this context, is synonymous with the term "conditions." *Webster's Third New Int'l Dictionary* 1827 (unabridged ed 2002). Consequently, the legislature authorized the commission to impose additional conditions on participation in the Dungeness crab fishery.

Petitioners raise one additional argument that warrants a brief discussion. Petitioners argue that the commission acted without statutory authority because the general policy of promoting equitable utilization of food fish set forth in ORS 506.109(3) does not satisfy the requirement of a clearly articulated policy to displace competition as is necessary to comply with federal antitrust laws under *California Liquor Dealers v. Midcal Aluminum*, 445 US 97, 100 S Ct 937, 63 L Ed 2d 233 (1980). That contention fails for at least two related reasons.

■ First, even if petitioners were correct—and we believe they are not—that OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) are not authorized under ORS chapter 506, ORS chapter 508 independently authorizes those rules. Second, as we discuss in detail above, the legislature did, in fact, clearly articulate a state policy to displace competition when it authorized the commission to restrict participation in the Dungeness crab fishery in ORS 508.921.[4]

---

[4] To the extent that petitioners' argument proceeds from the assumption that only the legislature may articulate state policy for purposes of qualifying for antitrust immunity, that premise is wrong. Other governmental actors may establish

OAR 635-006-1015(1)(g)(E) and *former* OAR 635-005-0055(6)(d) held valid.

---

state policy for purposes of antitrust immunity through the rulemaking process. *See, e.g., Bates v. State Bar of Arizona*, 433 US 350, 97 S Ct 2691, 53 L Ed 2d 810 (1977) (involving rules adopted by state Supreme Court to govern members of bar).