Argued and submitted January 16, reversed and remanded to circuit court with
instructions to remand to DMV for reconsideration May 27, 2009

In the Matter of
the Suspension of the Driving Privileges of
Ryan Eric HAYS,
*Petitioner-Appellant,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES DIVISION (DMV),
a division of the Department of Transportation,
*Respondent-Respondent.*

Malheur County Circuit Court
07015571M; A135543

209 P3d 405

J. Burdette Pratt, Judge.

John Henry Hingson III argued the cause and filed the briefs for appellant.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

SCHUMAN, J.

## SCHUMAN, J.

■ The Driver and Motor Vehicle Services Division (DMV) ordered the suspension of petitioner's driver's license for failing a chemical breath test, and, on judicial review, the circuit court affirmed the suspension. On appeal, petitioner contends that the suspension is invalid because the breath sample was obtained as the result of a process that did not conform to statutory requirements; according to petitioner, the officer who presented petitioner with the consequences of refusing to take the test exceeded his authority by adding a consequence that the statutes omit. We review the DMV order directly for substantial evidence and errors of law, ORS 813.450(4); *Davis v. DMV*, 209 Or App 39, 41, 146 P3d 378 (2006), *rev den*, 342 Or 344 (2007), and we reverse and remand.

The facts are not in dispute. Deputy Romans responded to a report of a motor vehicle crash. When he arrived at the scene, emergency medical personnel were attending to the driver, petitioner in this case, who was still inside the vehicle. Romans observed that petitioner smelled of alcohol and had bloodshot, watery eyes. He asked petitioner if he would perform field sobriety tests. Petitioner responded by stepping out of the vehicle, leaning on the door to maintain his balance. Romans administered only the horizontal gaze nystagmus test; in his judgment, petitioner was too impaired to perform the other tests. Roman concluded that petitioner was under the influence of alcohol.

Petitioner was taken to the hospital, where Romans arrested him for driving under the influence of intoxicants (DUII), ORS 813.010. Romans read petitioner the statutorily required information regarding implied consent rights and consequences, ORS 813.130, and asked him if he would consent to a breath test. Petitioner refused. Romans asked petitioner if he would consent to blood and urine tests. Petitioner again refused. Romans then informed petitioner that he would get a warrant for petitioner's blood and urine. Petitioner responded, "I will give a breath test."

Petitioner was transported from the hospital to the jail. After the required 15-minute observation period, and more than three hours after his first contact with petitioner,

Romans administered the breath test. Petitioner registered a blood alcohol content of .09 percent, which is .01 above the level sufficient to support a conviction for DUII. ORS 813.010(1)(a).

DMV suspended petitioner's driving privileges based on the breath test result, ORS 813.410(1), and petitioner requested an administrative hearing to contest the suspension, ORS 813.410(3). Following the hearing, the administrative law judge (ALJ) issued a final order suspending petitioner's license for one year. ORS 813.420(4); ORS 813.430(2). Petitioner sought judicial review in circuit court, ORS 813.410(7), and the court affirmed.

■ On appeal, ORS 813.450(3), petitioner renews two arguments that he made at the hearing. First, he argues that ORS 813.100(2) prohibits a police officer from administering a breath test after a driver has once refused to take the test, even if the driver, in response to the officer's renewed request, subsequently reconsiders and agrees. Second, he argues that his consent to the breath test was impermissibly coerced because it was given in response to Romans's threat to obtain a warrant for his blood and urine, something that Romans was not legally authorized to do. DMV responds that we rejected petitioner's first argument in *State v. Kirsch*, 215 Or App 67, 168 P3d 318 (2007), and that we must reject petitioner's second argument because there exists no basis for reversal of an administrative order of suspension where all of the statutory prerequisites for suspension under ORS 813.410(5) have been met.

We consider petitioner's statutory argument first. ORS 813.100(2) provides:

> *"No chemical test of the person's breath* or blood *shall be given,* under subsection (1) of this section, to a person under arrest for driving a motor vehicle while under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance, *if the person refuses the request of a police officer to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130."*

(Emphasis added.) As noted previously, petitioner argues that, under that provision, his initial refusal to submit to the

breath test precluded Romans from administering the test at any point thereafter, even though petitioner subsequently changed his mind and agreed to take it.

In *Kirsch*, a criminal case, we rejected that argument, holding that "ORS 813.100(2) does not preclude the giving of a breath test in circumstances in which a driver who initially refuses to take a breath test is later invited to reconsider and agrees to take the test." 215 Or App at 75. In reaching that conclusion, we examined the phrase "if the person refuses the request * * * to submit to the chemical test after the person has been informed of consequences and rights as described under ORS 813.130" in context, as required by the then-prescribed template for statutory interpretation in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), in order to ascertain the legislature's intent. We first determined that "refusal" could be interpreted in one of two ways: first, as "automatically, immediately, and absolutely preclusive"; or second, "by reference to the circumstances existing as of the time the test is given—that is, is there an *extant* refusal?" *Kirsch*, 215 Or App at 72-73 (emphasis in original). We determined that, given the statutory context, including the intended function of the implied consent statutory scheme generally—to "strongly encourage drivers to submit to a breath test"—and of ORS 813.100(2) in particular—to "preclude physical compulsion and to forestall the risks * * * and practical difficulties of forcible administration of a breath test to an unwilling driver"—only an interpretation that would "permit[ ] officers to invite, and encourage, drivers to reconsider refusals" could "plausibly comport[ ] with the legislature's intent." *Kirsch*, 215 Or App at 73-75.

Petitioner argues, however, that judicial review of an administrative agency's application of the statute is governed not by *PGE* but, rather, by *Springfield Education Assn. v. School Dist.*, 290 Or 217, 621 P2d 547 (1980), under which this court's standard of review as to whether an agency properly interpreted or applied a provision of law depends on whether the term at issue is "exact," "inexact," or "delegative." "Exact" terms "impart relatively precise meaning," and their applicability in a particular case depends solely on agency factfinding. *Id.* at 223-24. Consequently, an "exact" term requires no interpretation, and an agency's application

of such a term is reviewed for substantial evidence only. *Id.* at 224. "Inexact" terms are less precise, but they nonetheless embody a complete legislative policy choice. Their meaning, therefore, depends on what the legislature "intended to communicate or accomplish by the use of the word." *Id.*; *accord Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 354, 15 P3d 29 (2000) ("Although ['inexact' terms] embody a complete expression of legislative meaning, that meaning always may not be obvious."). An agency's interpretation of an "inexact" term is reviewed for consistency with legislative intent. *Springfield Education Assn.*, 290 Or at 224. A "delegative" term (for example, "good cause") expresses an incomplete legislative policy choice; such a term provides a broad range of possible interpretations and leaves the interpretative task to the agency. *Id.* at 228. Consequently, an agency's definition or use of a "delegative" term is reviewed to determine whether it is within the range of discretion allowed by the more general policy of the statute. *Id.* at 229.

█    Petitioner asserts that the phrase "if the person refuses the request * * * to submit to the chemical test," ORS 813.100(2), is an "exact" term, compelling a different result in this administrative law case than in *Kirsch*, a criminal case. We disagree. That phrase is not "so precisely defined as to be an 'exact term.'" *Coast Security Mortgage Corp.*, 331 Or at 354; *see Springfield Education Assn.*, 290 Or at 223 (examples of "exact" terms include "21 years of age, male, 30 days, Class II farmland, rodent, [and] Marion County"). Nor is there any indication in the statute within which the term appears, or in that statute's context, that the legislature intended to delegate the definition of the term to the agency. In other words, it is not a "delegative" term. We conclude that the phrase "if the person refuses the request" is an "inexact" term because, as noted above, it is "open to various interpretations." *Coast Security Mortgage Corp.*, 331 Or at 354; *see Kirsch*, 215 Or App at 72-73 (two plausible interpretations of "refusal"). As noted above, we review an agency's interpretation of "inexact" terms for consistency with legislative intent, in the same way that we interpret any other statutory term. Thus, our interpretation of ORS 813.100(2) for purposes of determining whether it was appropriately applied in an

administrative proceeding does not differ from our interpretation for other purposes, including for application in a criminal proceeding. We therefore conclude that the interpretation of the statute as set forth in *Kirsch* is controlling, and, for the reasons stated in that case, we reject petitioner's first argument.

Petitioner next argues that Romans's threat to obtain a warrant for his urine rendered petitioner's consent to the breath test invalid. The argument runs as follows: (1) Romans could not have obtained a warrant to collect a urine sample from petitioner. (2) Therefore, Romans's threat was not one that he lawfully could have accomplished. (3) That threat amounted to a violation of ORS 813.130, the statute that sets out what a law enforcement officer can tell a person arrested for DUII about the consequences of refusing a breath test; the statute, in other words, includes all of the consequences, and, by adding another consequence (forced production of a urine sample), Romans exceeded his authority. (4) That threat caused petitioner to retract his refusal to take the breath test and, instead, to consent. (5) The breath test was therefore unlawfully obtained. (6) For that reason, the suspension based on the results of the breath test must be set aside.

DMV responds with two arguments. The first relies on ORS 813.410(5), which provides that an implied consent hearing is limited to consideration of whether certain prerequisites have been met and that a suspension resulting from such a hearing is valid if they have. According to DMV, all of those prerequisites were met and "no other considerations are pertinent," presumably including whether the breath test resulted from compulsion. DMV's second argument is that, even if petitioner's reasoning is correct in theory, the suspension is valid nonetheless because petitioner never proved that he revoked his refusal and consented to take the breath test *because of* the allegedly unlawful threats.

Several propositions involved in this dispute are easily resolved and, indeed, are undisputed. First, petitioner is correct that Romans could not, in fact, have obtained a warrant allowing him to perform a urine test. ORS 813.131 provides that a "police officer may not request a urine test"

from an arrested driver unless the officer has completed training to recognize drug impaired driving and has reasonable suspicion that the arrested driver was impaired by something other than alcohol. Romans had neither the training nor the suspicion. At the administrative hearing, he testified as follows:

"[PETITIONER'S ATTORNEY]:   Did you have any evidence that he had consumed any intoxicant other than alcohol?

"[ROMANS]:   No, I did not, other than what he had said about the Vicodin, but that was taken I believe a day earlier.

"[PETITIONER'S ATTORNEY]:   So, that didn't factor in to your probable cause equation?

"[ROMANS]:   That is correct."

Thus, Romans's threat to obtain a warrant was a threat to do something that was not legally possible. (As explained below, that question is separate from the question whether the threat exceeded his authority.)

Second, if, in fact, the breath test was unlawfully obtained, the suspension based on its results is not valid. *Moore v. Motor Vehicles Division*, 293 Or 715, 723-24, 652 P2d 794 (1982).

■    Third, DMV's assertion that ORS 813.410(5) contains the exclusive list of prerequisites for a valid suspension, and that all of them were met in this case, is not correct. As *Moore* establishes, a suspension based on a test obtained without having permitted the arrested person to have an opportunity to consult with counsel is not valid, yet nothing in ORS 813.410(5) establishes such an opportunity as a prerequisite.

In light of those conclusions, this case reduces to two questions, one of law and one of fact. The legal question is whether Romans's statement that he would obtain a warrant for petitioner's urine amounted to a violation of the implied consent laws. The factual question is whether, if it did, that violation is what caused petitioner to consent. We begin with the legal question. It boils down to this: DMV asserts that, in

the context of an administrative proceeding, unless some source of law prohibits state action, that action is lawful if it occurs within the context of an agency performing its statutorily mandated function. Petitioner takes the position that, in such a context, unless some source of law authorizes a state agency to take a particular action, taking that action is unlawful. In other words, the state contends that, if it doesn't say we can't, we can; petitioner contends that, if it doesn't say you can, you can't.

Well-settled law supports the proposition that an official's actions in pursuit of a legislatively delegated objective must conform to the legislature's limits on the official's authority. As the Supreme Court explained in *Planned Parenthood Assn. v. Dept. of Human Res.*, 297 Or 562, 565, 687 P2d 785 (1984):

> "In the proper sequence of analyzing the legality of action taken by officials under delegated authority, the first question is whether the action fell within the reach of their authority, the question which in the case of courts is described as 'jurisdiction.' If that is not in issue, * * * the question is whether the action was taken by procedures prescribed by statute or regulation. Assuming that proper procedures were followed, the next question is whether the substance of the action, though within the scope of the agency's or official's general authority, departed from a legal standard expressed or implied in the particular law being administered, or contravened some other applicable statute."

*Accord Fishermen Against Irrespon. Realloc. v. Fish and Wild.*, 222 Or App 353, 357, 193 P3d 1014 (2008). Here, there is no question that the legislature has delegated to police officers the administration of breath tests for purposes of the implied consent statute. ORS 813.100. The dispositive question, then, is whether the procedures for administering the test establish an "expressed or implied" legal standard regarding what a police officer may or may not tell an arrested driver in order to induce him or her to submit to the test.

Clearly, the officer may not threaten physical compulsion. *State v. Spencer*, 305 Or 59, 71, 750 P2d 147 (1988)

(purpose of informing arrested driver of rights and consequences is to provide driver with incentives to consent to test, "short of physical compulsion"). Equally as clearly, the implied consent law is "intended to be coercive, not protective; the information about rights and consequences is intended to induce submission to the breath test." *State v. Nguyen,* 107 Or App 716, 720, 813 P2d 569, *rev den,* 312 Or 528 (1991). The statutory text further complicates the issue. The first two subsections of ORS 813.130 provide:

> "(1)   The information about rights and consequences shall be substantially in the form prepared by the Department of Transportation. The department may establish any form it determines appropriate and convenient.
>
> "(2)   The information about rights and consequences shall be substantially as follows:"

There follow some 25 column inches of specifications, including "consequences" for refusing to take the breath test (for example, suspension of driving privileges for a period "substantially longer" than the suspension for failing the test, ORS 813.130(2)(c), and a fine of between $500 and $1,000, ORS 813.130(2)(f)). However, subsection (4) then provides, "Nothing in this section prohibits the department from providing additional information concerning rights and consequences that the department considers convenient or appropriate."

■     A closer examination of the text and of the facts of this case, however, resolves the issue in favor of petitioner. Subsection (1) requires that the information be substantially in the form prepared *"by the Department of Transportation."* (Emphasis added.) Subsection (4) allows supplemental information if it is provided by *"the department."* (Emphasis added.) In this case, the supplemental information was not in the form prepared by the department; that form contains no information regarding a compulsory urine test. The supplemental inducement was added by the administering officer himself. Nothing in ORS 813.130 authorizes an individual officer to do so.

According to petitioner, that fact itself ends the inquiry; the officer exceeded his statutory authority by adding an inducement that was not specified by law. That theory

may or may not be correct; for example, an officer might or might not act within his ambit of authority by informing a driver of a consequence that could lawfully be imposed. *See, e.g.*, *State v. Douglas*, 260 Or 60, 81, 488 P2d 1366 (1971), *cert den*, 406 US 974 (1972) (O'Connell, C. J., dissenting on other grounds) (threat to obtain warrant does not necessarily render subsequent consent coerced "[i]f the officers threaten only to do what the law permits them to do"). When, as in this case, the inducement is a threat to perform an act that the law does *not* permit the officer to perform, however, we conclude that the threat itself exceeds the officer's authority; it violates the "legal standard expressed or implied" by ORS 813.130 and ORS 813.131, *Planned Parenthood Assn.*, 297 Or at 565, and any consent thereby induced is not lawfully obtained.

The sequence of events leading to petitioner's withdrawal of his refusal, described above, was as follows: Romans read the rights and consequences form to petitioner and asked him if he would consent to a breath test. Petitioner refused. Romans threatened to get a warrant for a urine test. Petitioner then consented. This sequence suggests that, because the recantation came after the threat, the threat caused the recantation. That conclusion, however, is a classic example of the *post hoc, ergo propter hoc* fallacy: the fact that one event follows another does not prove that the first event caused the second. *See Horn v. National Hospital Association*, 169 Or 654, 679, 131 P2d 455 (1942) (referring to the *post hoc* reasoning as "specious"). The ALJ, presented with the argument that the threat caused the recantation, made no finding of fact on that issue. We must therefore remand.

Reversed and remanded to circuit court with instructions to remand to DMV for reconsideration.